# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 98-1317

———————

United States of America, )
)
      Appellee, ) Appeal from the United States
) District Court for the Western
v. ) District of Missouri.
)
Joe Raymond Brooks, )
)
      Appellant. )

———————

Submitted: January 13, 1999
Filed: May 4, 1999

———————

Before RICHARD S. ARNOLD, BRIGHT and F.R. GIBSON, Circuit Judges.

———————

BRIGHT, Circuit Judge.

Defendant appellant Joe Raymond Brooks appeals his conviction and sentence after a jury found Brooks guilty of one count of failure to file a tax return, in violation of 26 U.S.C. § 7203, and two counts of tax evasion, in violation of 26 U.S.C. § 7201. Brooks seeks reversal of his conviction and review of his sentence. Brooks contends that the evidence adduced at trial was insufficient to support his conviction, principally because Brooks believed in good faith that the Internal Revenue Code ("Code") did not require him to pay federal income taxes. He further asserts that the district court erred, in not granting his motion to dismiss on grounds that the § 7201 counts for tax evasion were duplicitous, in failing to sever the § 7203 count from the § 7201 counts for trial,

and in declining to ask prospective jurors whether fear of retaliation by the Internal Revenue Service ("IRS") would affect their deliberations. Brooks also complains that the district court clearly erred in enhancing his sentence for use of sophisticated means to conceal his tax evasion activities, and obstruction of justice. For the following reasons, we affirm the conviction, reverse the two-point enhancement for obstruction of justice, and remand for resentencing.

I.      **FACTUAL BACKGROUND**

During the years charged in the indictment--1992 through 1994--Allied Signal, Inc. ("Allied Signal") employed Brooks as a tool and dye maker. The IRS initiated a criminal investigation of defendant Brooks in early 1995, after Brooks failed to appear at a meeting with the IRS to discuss his tax liability for the years 1992 and 1993.[1] IRS Agent Mary Seifers scheduled two meetings with Brooks to discuss his tax liability. After not appearing at the first meeting and rescheduling, Brooks sent a representative to the second meeting to inform Agent Seifers that he would not be attending the appointment. Through his representative, Brooks provided Agent Seifers with so-called "exodus documents." These documents stated that although Brooks was a private citizen of the State of Missouri, he was not a citizen of the United States, and, thus, he was not required to file a federal tax return and pay federal income taxes.

The IRS sent Brooks at least one letter urging him to file his taxes, and threatened to file for him if he did not comply, but Brooks remained adamant in his non-compliance. Brooks declined to file until the IRS would explain to Brooks' satisfaction which section in the Code required him to pay federal income taxes. According to Brooks, he never received a satisfactory answer, although the IRS

---

[1]The IRS investigator on this case testified at trial that Brooks came to the attention of the IRS after a tax protester then under indictment listed Brooks as a potential trial witness on that defendant's behalf.

informed him by letter of his obligation to file under the Code. Subsequently, two IRS agents visited Brooks at his home to advise him that the IRS had initiated an investigation of Brooks' tax liability for the tax years 1992 through 1994. Brooks refused to answer the agents' questions and directed them to leave his property.[2]

On May 27, 1997, the government indicted Brooks for criminal tax violations -- failure to file a federal income tax return for 1992, and tax evasion for the tax years 1993 and 1994. The case proceeded to trial. At trial, Brooks testified that, with the help of a third party preparer, he had filed returns with the IRS for the tax years 1988 through 1991. In late 1992, however, Brooks became associated with the tax protestor movement. Brooks attended various seminars and read tax protestor materials, and he came to believe, and apparently continues to believe, that the Code does not require him to pay federal income taxes.

Beginning in late 1992, Brooks took certain steps to attempt to avoid paying taxes. In December 1992, he submitted an IRS Form W-4 to Allied Signal claiming nine allowances and, in September 1993, he filed another Form W-4 claiming "exempt status." In March 1994, Brooks filed a Form W-8 in which he represented that, as a "non-resident alien" of the United States, he was exempt from filing a return for the year 1994. Brooks did not file any income tax returns with the IRS for the years 1992 through 1996.

The testimony at trial further indicated that Brooks attempted to conceal his income and assets from the IRS: Brooks cashed his paychecks personally instead of relying on Allied Signal's direct deposit system; placed the warranty deed of his

---

[2]After investigation into his failure to file tax returns in 1992 and 1993, the Department of Energy revoked Brooks' security clearance upon which Brooks' continued work at Allied Signal depended. Allied Signal subsequently terminated Brooks.

property, his homeowner's insurance policy and his utilities in the name of "Pidlin Acres Trust"; established a bank account in the name of "IM More Able Trust" from which he paid the bills from the Pidlin Acres Trust; and set up a P.O. Box under the name of "Mail Call" to receive all mail relating to his properties, bank accounts and other financial affairs. In addition, Crown Enterprise, the company hired to set up Brooks' trusts, recorded the trusts in Arizona, not in Jackson County, Missouri, where the real property actually existed. Thus, the property records in Jackson County did not show any interest Brooks may have had in any property or trust in Missouri.[3]

Brooks testified at trial in support of his defense. He explained his good faith belief that the Code did not obligate him to pay federal income taxes and how he had arrived at that belief. Brooks also gave an alternative explanation for his "evasive" actions--namely, that he was very ill at the time that he took these actions, and he wanted to preserve the property for his son by placing it in trust. During cross-examination, Brooks admitted that he had put his property in trust, and that he had taken the other "evasive" actions already discussed. He denied, however, that he had taken those actions to evade the payment of federal income tax. Upon being questioned about the trusts themselves, Brooks produced a one-page document which appeared to be a cover page for a more extensive "IM More Able Trust" trust agreement. Brooks testified vaguely about the terms of the trusts--referring the government to the trustee for more detailed information--but he could not produce the actual trust documents themselves. Further investigation by the government after trial revealed that the "IM More Able Trust" actually consisted of only the one-page document produced at trial; the government could find no other documents setting forth the terms of that trust.

---

[3]Brooks testified that Crown Enterprises created the "IM More Able Trust" with three holding trusts, one of which was Pidlin Acres.

Following a three-day trial, the jury returned a guilty verdict against Brooks on all three counts of the indictment. The district court sentenced Brooks to twelve months on Count I, and twenty-seven months on Counts II and III, to run concurrently for a total of twenty-seven months of confinement. The district court also ordered Brooks to pay the cost of the prosecution of $2,868.36, and imposed a term of three years of supervised release, a special assessment of $125.00, and a fine and restitution totaling $13,868.36.[4] Brooks timely appealed his conviction and sentence.

## II.    DISCUSSION

Brooks first argues that the government adduced insufficient evidence at trial to support his conviction for two counts of tax evasion. More specifically, Brooks contends that the government did not meet its burden in proving that Brooks had willfully evaded his tax obligations, in large part because Brooks had established his good faith belief that the Code did not require him to pay taxes. We review *de novo* a question of the sufficiency of the evidence to sustain a conviction and consider the evidence in the light most favorable to the government. See United States v. Bussey, 942 F.2d 1241, 1251 (8th Cir. 1991).

To obtain a conviction for income tax evasion under § 7201, the government must prove three elements beyond a reasonable doubt:  the existence of a tax deficiency, willfulness, and an affirmative act of evasion or attempted evasion of the tax. See Sansone v. United States, 380 U.S. 343, 351 (1965); United States v. Abodeely, 801 F.2d 1020, 1023 (8th Cir. 1986). To prove a tax deficiency, the first element, the government must show that the taxpayer had unreported taxable income. See United States v. Vannelli, 595 F.2d 402, 405-06 (8th Cir. 1979) ("In a tax evasion prosecution it is necessary to show that an individual received more income than he

---

[4]The government proved tax losses in the amount of $3,594.69 for 1992, $4,224.47 for 1993, and $6,049.20 for 1994.

reported."). Brooks does not dispute that he failed to report taxable income in the years charged in the indictment.

As to the second element of this offense, willfulness, Brooks contends that his failure to file tax returns and pay income tax in 1993 and 1994 resulted from his good faith belief that he had no obligation to do so under the Code. In support of this contention, Brooks testified at trial that after study of the Code and applicable case law, he came to the conclusion that his wages did not constitute income and that he did not qualify as a taxpayer under the Code. Therefore, considering this good faith belief, his failure to file income taxes was not willful under § 7201. The jury did not credit Brooks' good faith defense and neither do we.

"Willfulness, as construed by our prior decisions in criminal tax cases, requires the Government to prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty."[5] Cheek v. United States, 498 U.S. 192, 201 (1991); accord United States v. Grunewald, 987 F.2d 531, 535-36 (8th Cir. 1993); United States v. Pomponio, 429 U.S. 10, 11-12 (1976). Nevertheless, the Supreme Court has recognized a good faith defense to the element of willfulness in a tax evasion charge. See Cheek, 498 U.S. at 200-203. A good faith belief that a defendant's actions do not violate the tax laws negates the willfulness requirement, whether or not the belief is objectively reasonable. See United States v. Hildebrandt, 961 F.2d 116, 118 (8th Cir. 1992).

In this case, however, the government presented sufficient evidence of willfulness to provide the jury with a reasonable basis to conclude that Brooks

[5]In this case, the government proved that Brooks had a duty to file tax returns in the years 1992 through 1994. It also proved that Brooks knew of this duty, based on his own testimony and that of four tax preparers from whom Brooks had obtained assistance in filing his returns for the tax years 1988 through 1991.

intentionally had evaded his income tax obligation. Brooks made a concerted effort to dissociate himself from his property and income by cashing his checks personally instead of relying on Allied Signal's direct deposit system; changing the name on his warranty deed, his utilities, and homeowner's insurance policy to "Pidlin Acres Trust"; establishing a bank account in the name of "IM More Able Trust" for the payment of all bills associated with the "Pidlin Acres Trust"; and using a P.O. Box, also under the name of "IM More Able Trust," to receive his mail relating to his property, utilities and insurance. See Spies v. United States, 317 U.S. 492, 499 (1943) ("[An] affirmative willful attempt [at tax evasion] may be inferred from . . . concealment of assets or covering up sources of income, . . .").

As further evidence of willfulness, the government proved that Brooks had prepared and signed, 1) inaccurate IRS Form W-4s claiming nine allowances and exempt status for 1993, and 2) an IRS Form W-8 claiming exempt status for 1994 as a "non-resident alien" of the United States. Other courts have construed acts of this character to be indicative of willfulness. See United States v. Connor, 898 F.2d 942, 945 (3rd Cir. 1990) ("[The defendant's] purposeful failure to file an accurate W-4 form could be viewed by the jury as an affirmative willful act to support the violation of 26 U.S.C. § 7201"); United States v. Johnson, 893 F.2d 451, 453 (1st Cir. 1990) ("[E]vidence that [the defendant] submitted a W-4 form in 1987 claiming more allowances than he was entitled to and did not file an income tax return for 1987, was relevant to show [the defendant's] willfulness . . . ."); United States v. Shivers, 788 F.2d 1046, 1048 (5th Cir. 1986) ("[The defendant's] filing of [an] inaccurate W-4 form that stated he was exempt from withholding . . . was additional circumstantial evidence of willfulness , . . ."). Based on these precedents, we agree that a jury could construe Brooks' conduct in submitting inaccurate withholding forms to Allied Signal as evidence of willfulness.[6]

---

[6]Brooks' good faith defense is further weakened by his failure to pay Missouri state tax since 1990. Brooks refused to pay federal taxes, in part, because he did not

As to the third element of this offense, an affirmative evasive act, Brooks contends that the evasive acts charged in the indictment were innocuous on their face and could not support a § 7201 violation. We reject this argument as well. Section 7201 assesses guilt against "any person who . . . attempts *in any manner* to evade or defeat" the payment of income tax. 26 U.S.C. § 7201 (emphasis added). Thus, a single affirmative act--"any conduct, the likely effect of which would be to mislead or to conceal[,]" Spies, 317 U.S. at 499--is sufficient to satisfy the third element of this offense. See United States v. McGill, 964 F.2d 222, 230 (3ʳᵈ Cir. 1992). In upholding the jury's determination of guilt on the tax evasion counts, it is sufficient for us to note that the jury here could reasonably have found that the evidence introduced at trial supported a § 7201 conviction. See Spies, 317 U.S. at 500.

**B.**

Brooks next argues that the district court erred in failing to grant his motion to dismiss Counts II and III of the indictment on the grounds that these counts were duplicitous. See United States v. Street, 66 F.3d 969, 974 (8ᵗʰ Cir. 1995) ("Duplicity is the joining in a single count of two or more distinct and separate offenses."). In support of this contention, Brooks cites United States v. Williams, 644 F.2d 696 (8ᵗʰ Cir. 1981), where we held that 26 U.S.C. § 7205, not charged in this case, provides the exclusive penalty for submitting false W-4s to one's employer. Brooks contends that the government could not rely on Brooks' conduct in submitting the false W-4s to support the conviction on the § 7201 counts. Taking this argument to its logical conclusion, without the W-4 evidence, Brooks asserts that the § 7201 convictions must fail because the other evidence supporting the conviction was innocuous.

---

consider himself a United States citizen. Brooks even attempted at one point to dispose of his social security number. However, Brooks never disclaimed his citizenship in Missouri, and yet he did not file a return and pay income tax in Missouri either.

Brooks' argument lacks merit for two reasons.  First, Congress amended § 7205 to remove the exclusivity language so critical to our decision in <u>Williams</u>.  Prior to 1984, the penalty assessed under § 7205, for willfully providing false or fraudulent tax information to an employer, was "in lieu of any other penalty provided by law." 26 U.S.C. § 7205 (1982), <u>amended</u> <u>by</u>, 26 U.S.C. § 7205(a).  Congress subsequently amended this section to provide that the penalty in § 7205 existed "in addition to any other penalty provided by law."  26 U.S.C. § 7205.  Accordingly, the language in § 7205 upon which we relied in <u>Williams</u> no longer has the exclusive effect it once did.  Second, as stated above, the government relied on relevant record evidence, other than the filing of the false W-4s, to establish Brooks' guilt on the evasion charges.  The jury credited this testimony.  We conclude, therefore, that the district court did not err in failing to dismiss the two counts of tax evasion.

## C.

We reject Brooks' next argument that the district court erred in denying his pretrial motion to sever.  Brooks complains that the jury's consideration of Count I, failure to file a tax return, prejudiced its deliberations of the tax evasion charges set forth in Counts II and III.  Brooks may only succeed in challenging the district court's decision not to sever by demonstrating prejudice from the joinder of the counts.  <u>See</u> <u>United States v. Humphreys</u>, 982 F.2d 254, 259-60 (8th Cir. 1992).  We review the denial of a motion to sever for an abuse of discretion.  <u>See</u> <u>United States v. Dijan</u>, 37 F.3d 398, 402 (8th Cir. 1994).

Brooks' appeal on this issue is foreclosed by our decision in <u>Humphreys</u>, where we upheld the denial of a motion to sever tax evasion counts involving unreported legal fees from other tax evasion counts relating to the sale of stock.  <u>See</u> <u>Humphreys</u>, 982 F.2d at 259-60.  We rejected the defendant Humphreys' argument that the "spillover" effect would prejudice the jury's deliberations on the separate tax evasion counts.  Similarly, in this case, the jury's consideration of the evidence relating to the failure-to-

file count did not fatally prejudice the jury's deliberations on the tax evasion counts; the evidence supporting Count I, and Count II and III are "mutually admissible to show [the defendant's] motive, intent, and pattern of criminal behavior, and to negate [his] defenses." Humphreys, 982 F.2d at 259. Humphreys reminds us that where evidence of one crime would be admissible at a separate trial for another crime under Rule 404(b), a joint trial does not result in additional prejudice. Id.; see also United States v. Ferguson, 776 F.2d 217, 225 (8th Cir. 1985). Therefore, Brooks does not show that the district court's refusal to sever these counts caused him prejudice, and he has not convinced us that the trial court abused its discretion.

## D.

Brooks' next contention of error is the district court's refusal to ask certain voir dire questions proposed by Brooks to ensure the impanelment of a fair and impartial jury. The requested voir dire questions included the following:

> Does any member of the panel fear the IRS or fear the likelihood that the IRS will seek retribution against you if you were to tender a verdict of acquittal for an innocent defendant. If so, would this fear or concern affect in any way your ability to be fair and impartial in this case?

> Does any member of the panel believe that Paula Jones, the woman who made allegations and filed civil suit against President Clinton, is now under IRS audit because of having sued the President of the United States?

> Does any member of the panel believe that the tax laws are so well known and understood by the ordinary working tax payer that it would [be] impossible for a person to believe that they were not required to pay

-10-

income tax or file an income tax return when that person had been paid substantial sums of money while working for a private employer?[7]

R. at 52. Over defense objection, the trial court declined to ask these questions. We review the district court's decision on an abuse of discretion standard, see United States v. Bibo, 994 F.2d 524, 527-528 (8th Cir. 1993) (citations omitted), and examine the voir dire as a whole to determine whether the district judge, even without inquiring into fear of retaliation, impaneled an impartial jury through voir dire. See United States v. Bear Runner, 502 F.2d 908, 913 (8th Cir. 1974) (reviewing court must examine the sufficiency of the voir dire questioning in light of all the attendant circumstances presented by the case).

The record indicates that the district court took other steps during voir dire, aside from inquiring about fear of retaliation, to ensure the impartiality of the jury. After explaining that this case was a criminal tax matter, the district court asked the prospective jurors whether they could be fair and impartial, and whether they would follow the court's instruction on the law. The district court further instructed them on the presumption of innocence and the government's burden of proof. See United States v. Benson, 760 F.2d 862,863-84 (8th Cir. 1985). While the trial court might have asked a question about fear of retaliation instead of relying on general questions, see United States v. Krall, 835 F.2d 711, 715-16 (8th Cir. 1987), "we cannot say that the trial court abused its discretion or that its refusal to ask the question[s] caused a reasonable possibility that the jury's decision might be influenced by prejudice." Llach v. United

---

[7]Because the district court permitted Brooks' counsel to ask on voir dire a question directed at the same subject matter as this third question, Brooks' complaint about the district court's refusal to ask this question is without force. See Ham v. South Carolina, 409 U.S. 524, 527 (1973) (observing that a trial court is not required "to put the [voir dire] question in any particular form, or to ask any particular number of questions on the subject, simply because requested to do so by petitioner.").

States, 739 F.2d 1322, 1333 (8th Cir. 1984). We reject Brooks' claim of error relating to voir dire of the prospective jurors.

**E.**

Brooks further contends that the district court erred in enhancing his sentence for the use of sophisticated means under U.S.S.G. § 2T1.1(b)(2), and obstruction of justice under U.S.S.G. § 3C1.1. First, Brooks focuses on the two-point enhancement for using "sophisticated means . . . to impede discovery of the existence or extent of the offense, . . ." U.S.S.G. § 2T1.1(b)(2) (1997). The guideline commentaries assist us in discerning whether Brooks employed "sophisticated means" in evading his tax obligations:

> "Sophisticated means," . . . includes conduct that is more complex or demonstrates greater intricacy or planning than a routine tax-evasion case. An enhancement would be applied, for example, where the defendant used offshore bank accounts, or transactions through corporate shells . . . .

Section 2T1.1(b)(2), comment. (n.4) (1997). We review the factual finding of whether a tax evasion scheme qualifies as "sophisticated" for clear error. See United States v. Hunt, 25 F.3d 1092, 1097 (D.C. Cir. 1994); see also United States v. Saknikent, 30 F.3d 1012, 1013 (8th Cir. 1994).

A careful review of the testimony introduced at trial reveals that Brooks took various steps, detailed above, to conceal the ownership of his property and evade his tax obligations. The district court found that this evidence warranted imposing a sophisticated-means enhancement. See United States v. Pierce, 17 F.3d 146, 151 (6th Cir. 1994) (affirming a § 2T1.1(b)(2) enhancement where defendant's conduct, including providing false information to his employer, went beyond lying on a 1040 form); United States v. Jagim, 978 F.2d 1032, 1042 (8th Cir. 1992) (noting that a §

2T1.1(b)(2) enhancement is appropriate where the government demonstrates that the scheme is more than a "routine tax-evasion case," such as falsifying a Form 1040 to avoid paying federal taxes); United States v. Becker, 965 F.2d 383, 390 (7th Cir. 1992) (affirming a § 2T1.1(b)(2) enhancement for the defendant's conduct in eliminating all bank accounts in his name and depositing his earnings in his son's account). Although we recognize that Brooks could have taken even more intricate steps to avoid payment of his federal income taxes, we cannot ignore the sophisticated, evasive actions he did take. See United States v. Madoch, 108 F.3d 761, 766 (7th Cir. 1997). We, therefore, find no error in the district court's imposition of a two-point enhancement on this basis.

**F.**

Brooks establishes a valid ground for appeal in challenging the district court's two-point enhancement for obstruction of justice, U.S.S.G. § 3C1.1. Brooks contends that the district court did not make sufficient findings of fact to support an obstruction of justice enhancement. He further argues that the district court lacked a basis for imposing an upward adjustment to his guideline score. We agree on both counts.

A district court may impose an enhancement under § 3C1.1 only where the defendant "willfully obstructed or impeded, . . . the administration of justice during the investigation, prosecution, or sentencing of the instant offense." United States v. Eagle, 133 F.3d 608, 611 (8th Cir. 1998) (quoting U.S.S.G. § 3C1.1). This section also encompasses committing or suborning perjury. See United States v. Berndt, 86 F.3d 803, 810 (8th Cir. 1996); United States v. Gleason, 25 F.3d 605, 608 (8th Cir. 1994); U.S.S.G. § 3C1.1, comment. (n.3(b)). However, before imposing an enhancement under § 3C1.1, a district court "must review the evidence and make independent findings necessary to establish a willful impediment to, or obstruction of, justice." United States v. Dunnigan, 507 U.S. 87, 95 (1993). Although not required, it is preferable for the district court to address each element of the alleged perjury in "a separate and clear finding." Id. Applying these principles to this case, the record

makes plain that the district court did not make sufficient factual findings to justify imposition of this two-point enhancement.[8]

We also conclude that the record does not support imposition of this enhancement at all. The government has failed to meet its burden of proving that Brooks perjured himself in regard to the existence of these trusts. See United States v. Anderson, 68 F.3d 1050, 1055 (8th Cir. 1995) (stating that the government bears the burden of proving the facts necessary to support this enhancement). Brooks alludes in his testimony to specific terms of the trusts not evident on the "cover page" document produced at trial. The record also shows that the government's investigation failed to uncover these trust documents.[9] But Brooks testified that he simply paid a trust company in Arizona, Crown Enterprises, to form and record these trust instruments. His payment to Crown Enterprises constituted the extent of his involvement in formation of the trusts. During his testimony, Brooks also directed the government to

---

[8]The district court supported its finding of obstruction of justice with the following statement:

> All right. Based upon the evidence submitted and the evidence and the testimony during the trial, the court finds that the obstruction of justice assessment is properly assessed and it will remain.

Trial Tr. at 817.

[9]The government searched unsuccessfully for the trust documents at recording offices in Maricopa County, Arizona and Jackson County, Missouri. Brooks testified, however, that Crown Enterprises only filed the cover page with the recorder's office in Arizona, not the full trust document. As such, the government could not have obtained the trust document from a search of the recording offices.

the trustee for additional information on the trusts. Yet the government chose not to subpoena the trustee to testify at the sentencing hearing.[10]

At most, therefore, the record suggests that either these trust documents do not exist and Brooks credulously accepted the trustee's word as to their existence, or that the documents do exist and the government failed to unearth them. Either way, Brooks did not perjure himself. Therefore, because the government has failed to prove that Brooks lied about the trust documents' existence, we reverse the district court's imposition of a two-point enhancement for obstruction of justice.

## IV.   CONCLUSION

We affirm the defendant Brooks' conviction on all counts. However, the district court erred in imposing a two-point enhancement for obstruction of justice. We, therefore, reverse the obstruction of justice enhancement and remand for resentencing for reduction of the sentence without the two-point enhancement for obstruction of justice.

In affirming this conviction, we pause to add a comment. Although the government clearly established Brooks' guilt at trial, Brooks' situation as a tax evader is representative of too many individuals in our society who are duped by charlatans who preach and write that individuals do not need to pay taxes. Brooks fell prey to these people who told him that he need not pay taxes and that he could shelter his income and property through trusts. Cf. Newman v. Schiff, 778 F.2d 460 (8th Cir.

---

[10]The government's investigation showed that Crown Enterprises sells false trusts for individuals interested in avoiding the payment of tax. Based upon this fact and the association of Crown Enterprises with an individual formerly convicted of setting up false trusts, the government asks this court to accept that Brooks knew that no trust documents existed. However, this evidence by itself does not establish that Brooks lied on the stand about his knowledge of the trust documents.

1985).  This case may suggest that the false tax messengers in our society should be the object of vigorous actions against them by our government.  Those false messengers play a role, unfortunately, in inducing citizens to attempt to cheat on income taxes and in the process, some like Brooks, will go to prison.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.