# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1964

_____

United States of America,          *
                                   *
            Appellee,              *
                                   *    Appeal from the United States
    v.                             *    District Court for the District of
                                   *    North Dakota.
Thomas K. Schoppert,               *
                                   *
            Appellant.             *

_____

Submitted: February 11, 2004

Filed: April 1, 2004

_____

Before MORRIS SHEPPARD ARNOLD, HANSEN, and RILEY, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

A jury convicted Thomas Schoppert of income tax evasion under 26 U.S.C. § 7201, after the government presented evidence at his trial that he attempted to evade the payment of more than $450,000 in federal income taxes by making extensive use of cash, obtaining assets using a third party's credit card, and making false statements to Internal Revenue Service (IRS) agents attempting to collect his taxes. He appeals and we affirm.

I.

Mr. Schoppert first contends that the government's concession that the existence of a "tax deficiency" is a required element for prosecution under § 7201, and its further concession that he did not owe tax in addition to what was reported on his returns, compelled a judgment of acquittal. We disagree.

Section 7201 makes it a felony for a person "willfully [to] attempt[] in any manner to evade or defeat any tax imposed by [Title 26] or the payment thereof." 26 U.S.C. § 7201. The statute encompasses two separate types of offenses: "the offense of willfully attempting to evade or defeat the assessment of a tax as well as the offense of willfully attempting to evade or defeat the payment of a tax." *Sansone v. United States*, 380 U.S. 343, 354 (1965). Mr. Schoppert was convicted of the latter type of offense.

The Supreme Court has held that "the elements of § 7201 are willfulness; the existence of a tax deficiency; and an affirmative act constituting an evasion or attempted evasion of the tax." *Sansone*, 380 U.S. at 351 (internal citations omitted). We have ourselves noted the existence of these three elements in several cases. *See, e.g., United States v. Willis*, 277 F.3d 1026, 1030 (8th Cir. 2002). During Mr. Schoppert's trial, the district court[1] instructed the jury that the first essential element of the crime of tax evasion (the "deficiency" element) is that "the defendant owed substantial income tax in addition to that paid by the defendant." The parties disagree over whether this was a correct description of what the statute requires.

While § 7201 does not itself describe what a "deficiency" is (indeed, it does not even mention the word), the term is defined elsewhere in the Internal Revenue Code. The provision of the Code entitled "Definition of a deficiency," *see* 26 U.S.C. § 6211,

---

[1]The Honorable Rodney S. Webb, United States District Judge for the District of North Dakota.

provides in part: "For purposes of [Title 26] in the case of income ... taxes ... the term 'deficiency' means the amount by which the tax imposed ... exceeds ... the amount shown as the tax by the taxpayer upon his return."  Thus, "there is no 'deficiency,' in the tax code sense, where a taxpayer reports on his return that he owes an amount, but simply fails to remit such amount to the IRS."  *Perez v. United States*, 312 F.3d 191, 197 (5th Cir. 2002) (per curiam) (internal quotations omitted).

The Internal Revenue Code's definition is expressly applicable to Title 26 in cases involving income tax, and Title 26 includes the offense of tax evasion under § 7201.  But, as we have already noted, § 7201 does not itself include the term "deficiency"; the term is only at issue here because judges have used it as a way of explaining the requirements of the statute.  It is not self-evident to us that, in describing the offense of tax evasion by using this word, courts were attempting to invoke the technical definition of the term provided in the tax code.

The government in fact maintains that the "tax deficiency" element of § 7201 does not require a showing that there is a deficiency in the technical sense, but rather is judicial shorthand signifying the requirement that there must be "tax due and owing."  In the government's view, a deficiency would arise where a person reports the proper amount of tax on his return, but subsequently willfully fails to pay that amount.  We must determine whether the tax deficiency element of § 7201 may be satisfied only by the existence of a deficiency in the narrow, technical sense.

Some of our past cases do indeed seem to support Mr. Schoppert's contention that a deficiency, as that term is defined in the tax code, is required to support a § 7201 conviction.  In *United States v. Brooks*, 174 F.3d 950, 954 (8th Cir. 1999), we stated that "[t]o prove a tax deficiency, the first element [of income tax evasion under § 7201], the government must show that the taxpayer had unreported taxable income."  *Id.* at 954.  Similarly, in *United States v. Abodeely*, 801 F.2d 1020 (8th Cir. 1986), after noting that a conviction of tax evasion under § 7201 requires the

government to prove that "there is a tax deficiency for the relevant year that is due and owing," we stated that, "[i]n order to prove a tax deficiency, the government must show first that the taxpayer had unreported income, and second, that the income was taxable." *Id.* at 1023 (internal quotations omitted). We later stated in the same opinion that "[u]nder any § 7201 tax evasion case the government must show unreported taxable income as an element of its proof." *Id.* at 1025. And in *United States v. Vannelli*, 595 F.2d 402, 405-06 (8th Cir. 1979), we said that "[i]n a tax evasion prosecution it is necessary to show that an individual received more income than he reported."

While these cases seemingly equate § 7201's deficiency element with unreported taxable income, they all involved the evasion of an income tax assessment, *see Brooks*, 174 F.3d at 952-53; *Abodeely*, 801 F.2d at 1021-22; *Vannelli*, 595 F.2d at 403-04, which is not what Mr. Schoppert was convicted of. Our statements in these cases setting forth the elements of § 7201 have to be read in the context of the allegations that the government was attempting to prove. Neither party has pointed out any case involving only the evasion of an income tax payment in which we have explained the required elements of § 7201. In *United States v. Silkman*, 156 F.3d 833 (8th Cir. 1998), however, we discussed the concept of a § 7201 deficiency as it relates to both evasion of assessment and evasion of payment, stating:

> Section 7201 is broadly worded, reflecting the fact that willful tax evasion can occur at any stage of the IRS's complex process for determining, assessing, and collecting federal taxes. But whether a taxpayer is charged with tax evasion by willfully attempting to defeat the IRS's ascertainment of his tax liability, or by willfully attempting to evade the payment of a tax, the government must prove that the tax was in fact "imposed by this title," *in other words, a tax deficiency*. Conversely, a taxpayer-defendant has a right to establish as a defense that he owed no tax in addition to what he had paid.

*Id.* at 835 (emphasis added) (internal citations omitted).  Later in the opinion, we described proof of the "deficiency" element as proof "that taxes were in fact owed." *Id.*

"The starting point in any question of statutory interpretation is the language of the statute itself."  *United States v. Milk*, 281 F.3d 762, 766 (8th Cir. 2002).  Section 7201 plainly establishes a violation if anyone "willfully attempts in any manner" to evade a tax or its payment.  26 U.S.C. § 7201.  Evading the assessment of an income tax can be accomplished only through a course of action that includes underreporting of income, and thus requiring the existence of unreported taxable income for this species of § 7201 offense is consistent with the statutory language.  Evading the payment of an income tax, however, can be accomplished even when a taxpayer reports all taxable income on his return.

We think that our discussion in *Silkman* correctly described § 7201's deficiency element in a generic way that is applicable to both evasion-of-assessment and evasion-of-payment cases:  the taxes evaded must have been imposed by the Internal Revenue Code and owed by the taxpayer.  Similarly, the Third Circuit has described the deficiency element of § 7201 as "tax due and owing," *United States v. McGill*, 964 F.2d 222, 229 (3d Cir. 1992), *cert. denied*, 506 U.S. 1023 (1992), and "equivalent to a failure to pay a tax," *id.* at 240, and the Ninth Circuit has described the element as "an unpaid tax," *United States v. DeTar*, 832 F.2d 1110, 1113 (9th Cir. 1987).  Any more restrictive interpretation of this element of § 7201 would not square with the clear language of the statute, which under no reasonable reading suggests that the existence of unreported taxable income is required for the government to succeed in a case charging a defendant with evading the payment of a tax.

Based on the unambiguous language of § 7201, we thus conclude that our previous statements in cases involving the evasion of a tax assessment requiring the existence of unreported taxable income are not at home in the instant case.  In *United*

*States v. Hook*, 781 F.2d 1166, 1168 (6th Cir. 1986), *cert. denied*, 479 U.S. 882 (1986), the Sixth Circuit affirmed a conviction under § 7201 for evasion of tax payments where, *inter alia*, the defendant "filed timely and accurate tax returns with the IRS for the 1975 through 1980 tax years showing a total of almost $300,000 in taxes due, but paid only a few thousand dollars in satisfaction of this liability." And the Seventh Circuit, in *United States v. Conley*, 826 F.2d 551 (7th Cir. 1987), also affirmed a conviction under § 7201 for willfully attempting to evade the payment of income taxes, citing *Hook* for the proposition that "the filing of accurate returns does not exonerate the defendant's attempts to then evade the actual payment of his taxes by concealing his assets." *Id.* at 558. Consistent with these cases, we conclude that Mr. Schoppert's filing of accurate returns did not preclude his prosecution under § 7201 for his subsequent willful acts of attempting to evade payment of the taxes that he computed on those returns.

## II.

Mr. Schoppert next contends that the district court abused its discretion in refusing to instruct the jury, as he requested, that "[m]ere failure to pay a tax when due and owing is not a crime." We reject this argument.

Mr. Schoppert "is entitled to an instruction that conveys the substance of his request if his request is timely, it is supported by evidence in the case, and is a correct statement of the law." *United States v. Tucker*, 137 F.3d 1016, 1036 (8th Cir. 1998). He "is not entitled to any particular formulation, as long as the instructions given adequately convey the law." *Id.*

The district court instructed the jury that to convict Mr. Schoppert of tax evasion, the government was required to prove beyond a reasonable doubt that Mr. Schoppert "owed substantial income tax in addition to that paid by the defendant," "attempted to evade or defeat the payment of the tax as manifested by some affirmative act," and "acted willfully in the attempted evasion." The court went

on to instruct the jury on what constituted an "attempt," what it means to "evade or defeat" payment of a tax, and what constituted an "affirmative act."

We think that the district court's instructions to the jury adequately stated the law and clearly explained each of the three elements that the government needed to prove beyond a reasonable doubt to support a guilty verdict. The instructions plainly conveyed to the jury that any course of conduct that did not include each of these three elements would not constitute a violation of the tax evasion statute. Explicitly instructing the jury that they could not convict Mr. Schoppert based on his mere failure to pay a tax when due and owing would have been redundant. We detect no error here.

### III.

Mr. Schoppert asserts that the prosecutor unfairly prejudiced his defense by asking him a question during cross-examination about a motion in limine that he had filed. Before his trial, Mr. Schoppert filed a motion seeking to invoke his marital privilege and limit the testimony of Carolyn Brown, who had been married to Mr. Schoppert on two separate occasions. The district court denied the motion. At trial, the government called Ms. Brown as a witness, and she testified that the reason for the second marriage was that Mr. Schoppert "was getting deeper in trouble with the IRS and he didn't want [her] to be able to testify against him and he told [her she would] be safe against having to testify against him if [she] was his wife."

Under direct examination, in response to a question from his attorney as to whether he married Ms. Brown for the second time to prevent her from testifying against him, Mr. Schoppert answered, "Absolutely not. That's a misstatement of the law." He then testified that marriage does not prohibit one spouse from testifying against the other spouse, and that he would not have told Ms. Brown that if she married him, she could not testify against him, because that was not a correct statement of the law. On cross-examination, he again denied telling Ms. Brown that

one of the reasons he was marrying her was that she would be unable to testify against him in a criminal case. The prosecutor then asked him whether he was aware "that your attorneys and you filed a motion in order to keep [Ms. Brown] from testifying in this case." Mr. Schoppert's attorney objected to the question, arguing that it referred to a pretrial motion that could not be disclosed and that the motion was nothing more than a legal issue. The district court sustained the objection, but refused to strike the question.

Mr. Schoppert contends that the government's reference to his attempted invocation of the marital privilege improperly drew attention to the discrepancies between his testimony and Ms. Brown's, and implied to the jury that he felt that his ex-wife's testimony was potentially incriminating. He is entitled to a new trial only if the government's question was improper and so affected his substantial rights as to deprive him of a fair trial. *See United States v. Swanson*, 9 F.3d 1354, 1360 (8th Cir. 1993).

Mr. Schoppert cites several cases concluding that a prosecutor's elicitation of testimony that a defendant invoked the marital privilege, or a prosecutor's comment about the absence of a witness who has the marital privilege not to testify, constituted misconduct. *See, e.g., United States v. Sanchez*, 176 F.3d 1214, 1222-23 (9th Cir. 1999); *United States v. Morris*, 988 F.2d 1335, 1337-41 (4th Cir. 1993); *United States v. Chapman*, 866 F.2d 1326, 1334 (11th Cir. 1989), *cert. denied*, 493 U.S. 932 (1989); *United States v. Smith*, 591 F.2d 1105, 1110-12 (5th Cir. 1979). All of these cases, however, involved situations in which the spouse actually failed to testify. The cases that Mr. Schoppert refers us to reflect a concern that prosecutorial comments would lead the jury to speculate about what testimony the non-testifying spouse would have given and to improperly infer that such testimony would have been unfavorable to the defendant. Allowing the government to disclose to the jury the successful assertion of the marital privilege would turn the privilege into an "empty promise," *Morris*, 988 F.2d at 1339, pressuring defendants to forsake the privilege if

they did not want jurors to be led to assume the worst about the absence of spousal testimony.

In contrast to these cases, Mr. Schoppert never successfully used the privilege to prevent Ms. Brown from testifying. Because Ms. Brown actually testified, there was no danger that the government's question relating to Mr. Schoppert's failed invocation of the privilege would cause the jurors to speculate about what Ms. Brown's testimony might have been. The jurors had no occasion to draw an improper inference about any absence of testimony. They were able to assess for themselves whether Ms. Brown's testimony was detrimental to Mr. Schoppert, and we do not see how the government's question would have caused them to draw improper inferences about that testimony.

Mr. Schoppert's testimony during his direct examination, moreover, suggested that he would never have tried to exclude Ms. Brown's testimony because it was not possible to do so under the law. After Mr. Schoppert brought up the topic of his views on the applicability of the marital privilege to Ms. Brown's testimony, it was fair for the prosecutor to continue inquiring into the subject on cross-examination. Even if the objection to the question about whether he had sought to keep Ms. Brown from testifying was properly sustained by the district court, the question did not prejudicially affect Mr. Schoppert's substantial rights such that he was deprived of a fair trial. Any prejudicial effect on Mr. Schoppert's defense was slight, the evidence that he had evaded taxes was substantial, and the jury was instructed that lawyers' questions are not evidence.

## IV.

Mr. Schoppert maintains that he was denied his sixth amendment right to an impartial jury because the jury possibly overheard bench conferences between the lawyers and the district judge. He urges us to remand the case to the district court for

a hearing to determine whether the trial was tainted by any prejudicial information heard by the jury that had not been admitted into evidence.

During the third day of trial, at a bench conference, Mr. Schoppert's attorney asserted: "The jury is hearing me." The district court responded: "Music is being played for them. It's actually white noise." The matter was then dropped. At the beginning of the next day of trial, Mr. Schoppert's attorney stated that he believed the jury was able to overhear conversations at side-bar, because "they're closer to the side-bar than Mr. Schoppert was and he was able to hear us way over here. I don't know what's happening. I don't know if the system is working correctly." The district court replied that the system was "pretty well proven" and that if the white noise was directed at the jury, the jurors would not be able to overhear conversations during bench conferences. The court then stated: "We'll try to be quiet when we talk at side-bar." Later that day, following a recess, the district court addressed the jury in relation to bench conferences, stating:

> Before we get started, let me suggest to you folks, I have been told that perhaps I'm speaking too loud at bench conferences. I want to tell you that you're not supposed to listen to us when we have bench conferences. I have Darlene turn on that music. Make it a little higher in the future. Please try not to pay attention to what we're saying. It's not meant for your consideration. So accept my apology if we have been speaking too loudly, but try not to listen to what we are saying.

When a defendant contends that jury deliberations have been affected by some extraneous influence, "a district court may hold a hearing to determine whether any private communication, contact, or tampering with a juror has occurred in a criminal case and, if so, whether such incident has prejudiced the defendant." *United States v. Cunningham*, 133 F.3d 1070, 1074 (8th Cir. 1998), *cert. denied*, 523 U.S. 1131 (1998) (citing *Remmer v. United States*, 347 U.S. 227 (1954)). Trial judges are afforded considerable discretion in determining what steps, if any, are required to make certain that a jury has not been tainted. We thus review a district court's refusal

-10-

to conduct a so-called "*Remmer* hearing" or to grant a new trial based on allegations of a tainted jury for an abuse of discretion. *See id.* at 1075.

We can evaluate the district court's handling of Mr. Schoppert's concerns only in light of the information that he provided to it at trial. Though Mr. Schoppert's attorney stated his opinion to the district court that the jurors could overhear bench conferences, he never recommended during the trial that the court conduct a hearing or provide any other specific relief to deal with these concerns. *Cf. LeBlanc v. United States*, 391 F.2d 916, 917 (1st Cir. 1968). A defendant must, moreover, make some effort to support an allegation of jury taint before an evidentiary hearing or declaration of a mistrial will be appropriate. A bald assertion of taint will not suffice; the defendant needs to make a showing that his allegation is credible and that the prejudice alleged is serious enough to warrant whatever action is requested.

In *United States v. Hall*, 85 F.3d 367, 369 (8th Cir. 1996), concerned that the jury had overheard prejudicial information during bench conferences, we remanded the case to the district court to conduct a factual inquiry to determine the extent to which the jury was exposed to extraneous, prejudicial information. The defendant had presented the district court with an affidavit from the jury foreman stating that he and other jurors had overheard and discussed the judge's comments during a bench conference "concerning whether there would be evidence of chop shop, prostitution and murder admitted at the [drug conspiracy] trial." *Id.* at 368. These comments were not intended to be heard or considered by the jury. *See id.* at 370. The affidavit that the defendant offered constituted specific, verifiable evidence that bench conferences were actually overheard, and described the specific comments that were allegedly heard.

On the other hand, we held in *Coast-to-Coast Stores, Inc. v. Womack-Bowers, Inc.*, 818 F.2d 1398, 1402 (8th Cir. 1987), that a defendant moving for a mistrial had not properly supported its assertion that the jury had overheard prejudicial statements

-11-

made by the district court during a bench conference. We noted that affidavits from one defendant and from counsel for another defendant "asserting that they had overheard the court's remarks at their counsel table, which was located further from the bench than was the jury," was insufficient support. *Id.* We suggested in *Coast-to-Coast Stores* that the defendant should have asked to have the jurors polled to determine whether they had overheard the district court's statements, *see id.*, which is a step that Mr. Schoppert failed to request.

Mr. Schoppert did not submit affidavits from jurors or anybody else indicating that the jury overheard any prejudicial statements or that the audio system was not working properly. He made no offer of proof as to what particular conversations at the bench conferences were overheard. His argument that we should remand the case rests on his speculative theory that the white noise machine aimed at the jury must not have been functioning because the district judge, in response to Mr. Schoppert's comments that the jury might be overhearing bench conferences, suggested to the jury that he may have been speaking too loudly and urged them to pay no attention to the conferences. Considering the generality of and lack of proof accompanying Mr. Schoppert's comments to the district court about possible jury taint, and his failure at the time to request a hearing, we think that the district court's chosen method of handling the situation by instructing the jury not to pay attention to the bench conferences was not an abuse of discretion.

V.

Mr. Schoppert finally argues that the evidence presented at the trial was insufficient to support a finding beyond a reasonable doubt that he committed any affirmative act of evasion. Reviewing the evidence in the light most favorable to the jury's verdict, we cannot say that a reasonable fact-finder would have had to entertain a reasonable doubt that Mr. Schoppert committed an affirmative act of evasion. *See United States v. Malone*, 49 F.3d 393, 397 (8th Cir. 1995), *cert. denied*, 516 U.S. 877 (1995).

"[A]ny conduct, the likely effect of which would be to mislead or to conceal" for tax evasion purposes, can constitute an affirmative act of evasion. *See Spies v. United States*, 317 U.S. 492, 499 (1943). The evidence in the record was sufficient to support a finding beyond a reasonable doubt that Mr. Schoppert made extensive use of cash, used another man's credit card to make purchases, and gave false information to the IRS, and that all of these affirmative acts were committed to evade the payment of taxes.

## VI.

For the reasons indicated, we affirm Mr. Schoppert's convictions.

_____