# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

Nos. 08-1067/1250

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee/ | * | |
| Cross-Appellant, | * | |
| | * | Appeals from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Stephen Richards Barker, | * | |
| | * | |
| Appellant/ | * | |
| Cross-Appellee. | * | |


_____

Submitted: November 11, 2008
Filed: February, 12, 2009

_____

Before MURPHY, RILEY and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

A jury found Stephen Barker guilty of four counts of tax evasion—evading and defeating the payment of income taxes, penalties and interest—in violation of 26 U.S.C. § 7201, and the district court sentenced him to 42 months' imprisonment. Barker appeals his conviction, arguing that the Government's evidence was insufficient to prove that he acted willfully in light of his good-faith belief that he did not owe any federal income taxes. The Government cross-appeals Barker's sentence,

arguing that the district court committed significant procedural error. For the reasons discussed below, we affirm Barker's conviction, vacate the sentence and remand to the district court for resentencing.

## I. BACKGROUND

From 1994 to 1997, Stephen Barker worked in the investment-brokerage business and earned over $3,800,000 in personal income. During this period, however, Barker did not pay all of the federal income taxes that he owed. For the 1994 tax year, Barker underpaid his taxes by $9,650, and for the 1995, 1996 and 1997 tax years, Barker did not file any tax returns or pay any taxes despite owing $1,367,947. The Internal Revenue Service ("IRS") assessed Barker's unpaid taxes and interest for the 1994 tax year in August 1997, and it filed a tax lien in November 1997. The IRS assessed Barker's taxes and interest for the 1995, 1996 and 1997 tax years in December 1999, and it notified Barker that it intended to levy his assets in March 2000. Even after the IRS's assessments, tax lien and threat to levy his assets, Barker did not satisfy his tax debt. In July 2006, a federal grand jury returned an indictment charging Barker with four counts of tax evasion by evading and defeating the payment of his taxes, penalties and interest for each of the relevant tax years. Barker pled not guilty to the charges, and the case proceeded to trial.

In its case-in-chief, the Government presented evidence demonstrating Barker's tax liability, the IRS's assessment of his tax debt, and the IRS's unsuccessful efforts to collect from Barker. The Government also presented evidence of Barker's alleged efforts to willfully evade the payment of his assessed tax liability. In 1996, after Barker stopped paying his taxes, Barker and his wife created offshore trusts and business entities in the countries of Andorra and St. Kitts and Nevis. Barker owned and controlled these entities and had signatory authority over their associated financial accounts. Later, Barker hired three related companies, the Laughlin Group, the Privatech Group and the Nevis American Trust, to create domestic corporations and

limited liability companies that would not appear to be owned by Barker but would, in fact, be controlled by him. Barker used these offshore and domestic entities as shells for receiving and holding his personal income. Barker continued to transfer his personal assets to these entities, even after the IRS assessed Barker's back taxes in December 1999 and notified him of its intent to levy his assets in March 2000. From March 2000 through at least December 2006, these entities held nearly all of Barker's personal assets, including $1.5 million from a personal disability benefits settlement, nearly $1.2 million in consulting income, automobiles, boats and homes. One particular entity, Shasta Property Management, Inc., held Barker's homes in Minnesota, Florida and Rhode Island.

The Government also presented evidence that before April 2003, the IRS began investigating and prosecuting members of Laughlin, Privatech and Nevis American for assisting others in evading taxes. After Barker learned of the IRS's investigation, he terminated his relationship with these companies. In an April 7, 2003 facsimile letter to Jim Fontano at the Privatech Group, Barker wrote:

> This [investigation] may have jeopardized my business going forward. I don't need the IRS connecting me to Shasta, which they have now done, while I am going through a Collection Due Process Hearing and Tax Court on two separate matters from the late '90s. By seizing Laughlin's and your records, they can now make a lot of connections. I didn't pay major dollars for that to happen. Terry, Aaron and I have had more than one conversation about this type of scenario, and they assured me that a connection could never be made.

In this same letter, Barker directed Fontano to "please erase any files for Shasta." During a May 2003 interview with the IRS, Barker denied having any knowledge of or involvement with Shasta Property Management.

At the close of the Government's case-in-chief, Barker moved for a judgment of acquittal, arguing that the Government's evidence was insufficient to sustain a

conviction for tax evasion because it did not prove that Barker willfully evaded and defeated the payment of federal income taxes. The district court denied Barker's motion.

In his case-in-chief, Barker did not dispute the Government's allegations that the IRS had assessed his taxes and that he had not paid them. Instead, Barker testified that starting in 1996, he developed a belief that according to certain provisions of the tax code, the payment of federal income taxes was voluntary. In 1999, Barker came to the additional conclusion that he was a nonresident alien not subject to federal income taxes because he was a citizen of the "United States of America" rather than the "United States" mentioned in the tax code. According to Barker, the "United States" of the tax code is an entity that governs only the District of Columbia, Puerto Rico and the Marinara Islands, and it is different from the "United States of America," which governs the fifty states. In 2003, Barker further supplemented his tax beliefs by subscribing to a "chargeback redemption strategy," by which he believed that he had satisfied any outstanding IRS debts. According to this strategy, a citizen may satisfy a tax debt by taking control of an account, which the United States Federal Reserve creates in each citizen's name at birth, and charging the tax debt against the funds in the account. Barker allegedly believed that this strategy discharged his tax debts because the account in the name "STEPHEN RICHARDS BARKER" was funded with between $500,000 and $1,000,000 at his birth fifty years earlier and had been accruing annual interest at a rate of six to eight percent since its creation. Barker also disputed the Government's evidence of his willfulness by testifying that his practice of keeping personal funds in foreign and domestic entities was innocent and done only to protect his personal assets from his litigious brokerage clients. The jury found Barker guilty on all four counts.

Prior to sentencing, the United States Probation Office prepared Barker's Presentence Investigation Report ("PSR"). In the "offense conduct" section of the PSR, the Probation Office chronicled Barker's acts of evasion, which continued

-4-

through at least December 2006. The Probation Office then proceeded to calculate Barker's advisory sentencing guidelines range by first determining the applicable version of the United States Sentencing Guidelines ("U.S.S.G."). *See* U.S.S.G. § 1B1.11(a)-(b)(1) (instructing courts to use "the Guidelines Manual in effect on the date that the defendant is sentenced" unless doing so would "violate the ex post facto clause of the United States Constitution," in which case the manual "in effect on the date that the offense of conviction was committed" should be used). Rather than using the December 2006 date for this determination, the Probation Office concluded that Barker's offense conduct occurred "through April 15, 1998," apparently relying on the date upon which his 1997 tax return was due.

Using the April 15, 1998 date, the Probation Office found that Barker's advisory sentencing guidelines range should be calculated using the November 1997 U.S.S.G. manual, the version effective as of April 15, 1998, instead of the November 2006 U.S.S.G. manual, the version effective on Barker's expected sentencing date, because using the November 2006 version would result in a higher guidelines range, thereby violating the Ex Post Facto Clause of the United States Constitution. *See* U.S.S.G. § 1B1.11; U.S.S.G. amend. 617 (amending U.S.S.G. § 2T1.1 to alter the definition of "tax loss" to include interest and penalties (in addition to the actual tax loss) for willful evasion of payment cases under § 7201 and amending U.S.S.G. § 2T4.1 to change the tax loss amounts in the tax table, effective November 2001). Using the November 1997 U.S.S.G. manual, the Probation Office calculated an advisory guidelines range of 37 to 46 months' imprisonment based upon the $1,377,597 tax loss under § 2T1.1(a) and its corresponding base offense level of 19 under § 2T4.1(N), a two-level increase under § 2T1.1(b) due to Barker's use of sophisticated means of concealment, and Barker's criminal history category of I.

The Government objected to the PSR, contending that the Probation Office used the wrong version of the guidelines based on its improper conclusion that an evasion of payment offense under § 7201 is not a continuing offense. Because evasion of

payment is a continuing offense and because the PSR found that Barker's acts of evasion continued through December 2006, the Government argued that Barker's advisory sentencing guidelines range should have been calculated using the November 2006 U.S.S.G. manual under U.S.S.G. § 1B1.11, resulting in a higher advisory guidelines range.

The Probation Office did not revise the PSR in response to the Government's objection, stating that "[t]he issue as to whether the instant offense is a continuing offense remains unclear." However, the Probation Office noted that

> Should the Court concur with the Government, the Guideline Manual applicable November 1, 2006, would be used to calculate the guidelines in this case. Pursuant to § 2T1.1, Application Note 1, the tax loss in evasion of payment cases includes interest and penalties (effective November 1, 2001); therefore, the tax loss in this case would increase from $1,377,597 to $3,600,821.53. As a result, the total offense level would be 26. Combined with a criminal history category I, the advisory guideline imprisonment range would be 63 to 78 months.

At sentencing, the Government renewed its objection to the PSR's legal conclusion that an evasion of payment under § 7201 is not a continuing offense. The district court overruled the Government's objection and adopted the findings and recommendations in the PSR, including the advisory guidelines range calculation of 37 to 46 months' imprisonment. After considering both parties' sentencing arguments and the sentencing factors enumerated in 18 U.S.C. § 3553(a), the court sentenced Barker within its calculated advisory guidelines range to 42 months' imprisonment.

## II.    DISCUSSION

### A. Sufficiency of the Evidence

Barker appeals his conviction, arguing that the Government's evidence of his willfulness was insufficient to sustain his conviction for tax evasion.

> [We] review the sufficiency of the evidence de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict.  This standard of review is strict; we will uphold the verdict if there is any interpretation of the evidence that could lead a reasonable-minded jury to find the defendant guilty beyond a reasonable doubt.

*United States v. Cole*, 525 F.3d 656, 661 (8th Cir.) (quoting *United States v. Hamilton*, 332 F.3d 1144, 1148-49 (8th Cir. 2003)) (internal quotation marks omitted), *cert. denied*, *Gilbert v. United States*, 555 U.S. ---, 129 S. Ct. 309 (2008).

A conviction for "willfully attempting to evade or defeat the payment of a tax" under 26 U.S.C. § 7201 requires proof of three elements:  "willfulness; the existence of a tax deficiency; and an affirmative act constituting an evasion or attempted evasion of the tax."  *United States v. Schoppert*, 362 F.3d 451, 454 (8th Cir. 2004) (quoting *Sansone v. United States*, 380 U.S. 343, 351 (1965)).  The willfulness element "requires the Government to prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty."  *Cheek v. United States*, 498 U.S. 192, 201 (1991).  However, where a defendant seeks to defeat a finding of willfulness through a "good-faith belief that he was not violating any of the provisions of the tax laws . . .[,] the issue is whether, based on all the evidence, the Government has proved that the defendant was aware of the duty at issue."  *Id.* at 201-02; *see also United States v. Gustafson*, 528 F.3d 587, 591 n.3 (8th Cir. 2008) (holding that a "good-faith misunderstanding of the law or a

good-faith belief that [they were] not violating the law" negates willfulness (alteration in original) (quoting *Cheek*, 498 U.S. at 201)).

Barker argues that the Government's evidence of his willfulness was insufficient to sustain his conviction because it did not refute his good-faith beliefs that the payment of federal income taxes was voluntary under the tax code, that he was a nonresident alien not subject to federal income tax, and that he discharged any tax liability through his chargeback redemption strategy. We disagree. Because Barker's argument merely raises the issue of whether he "knew of the duty purportedly imposed by the provision of the statute or regulation he is accused of violating," we need only determine whether "the Government has proved that the defendant was aware of the duty at issue." *Cheek*, 498 U.S. at 201-02. Viewing all of the evidence in the light most favorable to the jury's verdict and drawing all reasonable inferences in the Government's favor, we find that the evidence was sufficient for a reasonable jury to conclude beyond a reasonable doubt that Barker was aware of his obligation to pay federal income taxes and that Barker, therefore, acted willfully.

At trial, the Government presented significant circumstantial evidence showing that Barker was aware of his obligation to pay federal income taxes. The Government produced evidence that Barker maintained his personal assets in domestic and offshore entities from 1996 until at least December 2006. Given the temporal proximity between the IRS's assessment of his taxes in August 1997 and December 1999, the IRS's November 1997 tax lien and March 2000 threat to levy his assets, and Barker's attempts to shield his assets, a reasonable jury could conclude that Barker's attempt to place his assets beyond the reach of the IRS demonstrated Barker's knowledge of his duty to pay federal income taxes. *See United States v. Brooks*, 174 F.3d 950, 955 (8th Cir. 1999) (finding sufficient evidence of willfulness where the defendant "made a concerted effort to dissociate himself from his property and income" by transferring property to a trust).

The Government also produced evidence that Barker sought to terminate his relationship with Laughlin, Privatech and Nevis American after he discovered that the IRS was investigating the companies for assisting others in evading payment of their taxes and was learning the identity of their clients. Given the close temporal proximity between the IRS's attempts to levy Barker's assets and Barker's April 2003 statements that "I don't need the IRS connecting me to Shasta," "I didn't pay major dollars for that to happen," and "they assured me that a connection could never be made," a reasonable jury could conclude that Barker's letter demonstrated his awareness of his duty to pay taxes and his efforts to avoid payment. *Cf. United States v. Noske*, 117 F.3d 1053, 1059 (8th Cir. 1997) (finding sufficient evidence of a defendant's willfulness in a conspiracy to evade taxes where she sought to liquidate her client's assets after an adverse tax court determination).

The Government also elicited testimony that Barker falsely denied having any knowledge of or involvement with Shasta Property Management, Inc. during the course of the IRS's investigation of Laughlin, Privatech and Nevis American. Barker's false statement to the IRS would also allow a reasonable jury to conclude that Barker was aware of his duty to pay taxes and attempted to avoid that duty. *See Brooks*, 174 F.3d at 955 (holding that a defendant's submission of false information to the IRS supported a finding that the defendant willfully evaded taxes).

Although the jury could have accepted Barker's testimony regarding his good-faith beliefs, "in reviewing the denial of a judgment of acquittal, it is not our role to assess [the defendant's] credibility." *United States v. Garcia-Hernandez*, 530 F.3d 657, 662 (8th Cir. 2008). Because a reasonable interpretation of the Government's evidence "could lead a reasonable-minded jury to find the defendant guilty beyond a reasonable doubt," we must affirm Barker's conviction. *See Cole*, 525 F.3d at 661 (quoting *Hamilton*, 332 F.3d at 1149).

## B. Procedural Error in Sentencing

The Government cross-appeals Barker's sentence, arguing that the district court erred in its conclusion that an evasion of payment under § 7201 is not a continuing offense for the purpose of determining the correct guidelines version under U.S.S.G. § 1B1.11. Because this error led the court to use the wrong guidelines version in calculating Barker's advisory sentencing guideline range, the Government argues that the district court committed a procedural error requiring us to vacate Barker's sentence and remand for resentencing. "We review a sentence in two parts: first, we review for significant procedural error, such as an improper calculation of the advisory sentencing guidelines range; and second, absent significant procedural error, we review for substantive reasonableness." *United States v. Fischer*, 551 F.3d 751, 754 (8th Cir. 2008). In reviewing a sentence for procedural error, we review the district court's factual findings for clear error and its application of the guidelines de novo. *See United States v. Yah*, 500 F.3d 698, 702 (8th Cir. 2007).

We agree with the Government that the district court erred in its legal conclusion that an evasion of payment under § 7201 is not a continuing offense. *See United States v. Marchant*, 774 F.2d 888, 891 (8th Cir. 1985) ("the violation of section 7201 is a 'continuing offense'"). Because tax evasion is a continuing offense, the date of the defendant's last act of evasion is the "date of the offense of conviction" in determining the appropriate version of the guidelines under U.S.S.G. § 1B1.11. *See United States v. Maggard*, 156 F.3d 843, 849 (8th Cir. 1998) ("Some offenses . . . are 'continuing offenses' for which the completion date controls which version of the Sentencing Guidelines should apply." (quoting *United States v. Reetz*, 18 F.3d 595, 598 (8th Cir. 1994))); U.S.S.G. § 1B1.11 cmt. 2 ("Under subsection (b)(1), the last date of the offense of conviction is the controlling date for ex post facto purposes." (underline omitted)).

The district court's error constitutes significant procedural error because it led the court to use the wrong version of the guidelines manual, thereby resulting in a lower advisory sentencing guidelines range. Based on its erroneous legal conclusion that tax evasion was not a continuing offense, the court used April 15, 1998, the day that Barker's 1997 tax return was due, rather than December 2006, the date of Barker's last acts of evading payment, as the "date of the offense of conviction" under § 1B1.11. This led the court to use the November 1997 U.S.S.G. manual under § 1B1.11(b)(1) and resulted in an advisory guidelines range of 37 to 46 months' imprisonment. If, however, the court had used the December 2006 date, which was well supported by the evidence at trial and the PSR's offense conduct paragraphs adopted by the district court, then the court would have used the November 2007 U.S.S.G. manual, the version of the guidelines manual in effect as of the date of sentencing.[1] *See* U.S.S.G. § 1B1.11(a). Under the November 2007 U.S.S.G. manual, which included the November 2001 amendments to U.S.S.G. §§ 2T1.1 and 2T4.1, Barker's advisory sentencing guidelines range would have been 63 to 78 months' imprisonment.[2] Because the district court's error resulted in an improperly calculated advisory guidelines range, we find that the court committed a significant procedural error. *See Fischer*, 551 F.3d at 754.

Furthermore, we find no merit in Barker's contention that the court's procedural error is harmless based on Barker's assertion that the district court would have imposed the same sentence even if the November 2007 version of the guidelines had

[1]The Probation Office referred to the November 2006 U.S.S.G. manual in the PSR because it anticipated that sentencing would occur prior to November 1, 2007, the effective date of the November 2007 U.S.S.G. manual. Because sentencing occurred on December 20, 2007, however, we recognize that the November 2007 U.S.S.G. manual was the version of the guidelines "in effect as of the date of sentencing." *See* U.S.S.G. § 1B1.11(a).

[2]This calculation is based upon the amended tax table in § 2T4.1 and the PSR's finding that the tax loss, with penalties and interest included, is $3,600,821.

been applied. Barker has failed to identify any evidence to support his claim that the court would have given the same sentence had it correctly calculated the advisory guidelines range, and we have independently determined that none of the court's statements at sentencing could be reasonably construed to support Barker's position. Thus, we do not find the district court's procedural error to be harmless. *See United States v. Gutierrez*, 437 F.3d 733, 736 (8th Cir. 2006) ("The party benefitting from the error has the burden to prove that it was harmless.").

Because the district court committed a significant procedural error, we do not review the sentence for substantive reasonableness, but we instead remand for resentencing. *See United States v. Vickers*, 528 F.3d 1116, 1120 (8th Cir. 2008).[3]

## III. CONCLUSION

For the foregoing reasons, we affirm Barker's conviction, vacate the sentence and remand to the district court for resentencing.

_____

---

[3]We note that Barker submitted three pro se filings on November 6, 2008, November 10, 2008, and December 4, 2008, after this case had been fully briefed. We do not consider these pro se filings because "[w]e generally do not accept pro se motions or briefs when an appellant is represented by counsel." *United States v. McIntosh*, 492 F.3d 956, 961 n.2 (8th Cir. 2007); *see also United States v. Moore*, 481 F.3d 1113, 1114 n.2 (8th Cir.), *cert. denied*, 552 U.S. ---, 128 S. Ct. 122 (2007).