# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 02-1408

———————

United States of America,

            Appellee,

v.

Steven Hart,

            Appellant.

\*
\*
\*
\*
\*  Appeal from the United States
\*  District Court for the
\*  Eastern District of Missouri.
\*
\*
\*

———————

Submitted:  September 10, 2002

Filed:  April 2, 2003

———————

Before WOLLMAN, HEANEY, and BYE, Circuit Judges.

———————

BYE, Circuit Judge.

Steven Hart pleaded guilty to one count of income tax evasion in violation of 26 U.S.C. § 7201.  The parties agreed the district court would calculate the amount of tax loss to determine the appropriate base offense level under the United States Sentencing Guidelines (U.S.S.G.), and determine whether any special offense characteristics applied.  The district court calculated the amount of tax loss at $126,704.  The district court also determined Hart's offense involved sophisticated means and added two levels pursuant to U.S.S.G. § 2T1.1(b)(2).  Hart argues on appeal the district court erred in calculating the tax loss, and in adding two levels for

the use of sophisticated means. We affirm in part, reverse in part, and remand for resentencing.

I

During the years 1994 and 1995, Hart received personal income from three sources. He operated a bail bonding company. He also sold used cars through a corporation named L & S Motors, which did business as Midtown Motors. Finally, Hart referred some car buyers interested in high-end luxury cars to Plaza Motors, and received commission checks from Plaza Motors for such referrals. The commission checks were made out to Midtown Motors instead of Steven Hart personally. Although Hart failed to keep any corporate records for Midtown Motors that identified the commission income, he did provide Plaza Motors with a tax identification number for Midtown Motors. Consequently, Plaza Motors reported all income generated from the commission checks it issued to Midtown Motors to the government on Form 1099s.

Hart failed to file income tax returns and pay federal income tax for the personal income he received in 1994 and 1995. As a result, he was indicted for two counts of tax evasion on April 12, 2001. In a plea agreement entered August 13, 2001, Hart pleaded guilty to Count II of the indictment in return for the government's dismissal of Count I.

In his plea agreement, Hart stipulated to the following facts:

> During the calendar years 1994 and 1995, Defendant Steven Hart, a resident of St. Louis County, Missouri, had and received taxable income upon which income tax was due and owing. A substantial portion of the income constituted commission checks received from Plaza Motors for the sale of automobiles. Defendant Hart directed that the checks be made out in name of Midtown Motors, a company operated by Hart.

The checks constituted personal income for Defendant Hart. The checks were endorsed by Defendant Hart to a third party who acted as a private banker for Defendant Hart. The checks were allocated to pay expenses incurred by Defendant Hart including mortgage, personal loans and credit card expenditures. Defendant Hart failed to keep records of this income producing activity.

Appellant's App. 14-15. The plea agreement further provided the parties disagreed on the amount of taxable income attributable to Hart for the two years in question. Id. at 15.

The presentence report (PSR) prepared after Hart pleaded guilty concluded that Hart failed to report income totaling $332,704 for the years 1994 and 1995, and that the federal income tax was calculated as due and owing in the amount of $132,099. The PSR applied the guidelines in effect on November 1, 1995. Pursuant to U.S.S.G. §§ 2T1.1 and 2T4.1 (tax loss table), a tax loss of over $120,000 resulted in a base offense level of 15. The PSR also concluded Hart used sophisticated means to conceal his income and avoid the tax liability, and recommended a two-level enhancement under U.S.S.G. § 2T1.1(b)(2). The PSR also recommended a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. This resulted in a final offense level of 14, which called for a sentencing range of 18-24 months under Criminal History Category II. Hart preserved his right to challenge the tax loss calculation and enhancement by filing timely objections to the PSR. He requested a full hearing on those two issues at the sentencing hearing.

At the sentencing hearing, the district court heard testimony from Internal Revenue Service (IRS) Special Agent Scott French, who testified on behalf of the government, and certified public accountant Neil Packman, who testified on Hart's behalf. As to the tax loss calculation, the disputed issue was whether the commission income from Plaza Motors should have been considered the corporate income of Midtown Motors rather than included in Hart's personal income. Hart contended the

tax loss, absent the commission income, was only $58,951. As to the enhancement, the disputed issues were whether Hart's failure to keep records, and his designation of the commission checks as corporate rather than personal income, and his use of a private banker, evinced "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." U.S.S.G. § 2T1.1 comment. n.4.

French testified Hart was using Midtown Motors as a front to funnel personal income to Jon Fuhrer, the private banker-like conduit, to pay personal debts. The government argued Hart's commissions from Plaza Motors were unrelated to Midtown Motors's used car business and the income from the enterprise was properly classified as personal. French acknowledged Fuhrer was lending large sums of money both to Hart personally and to Midtown Motors, but testified that a complete lack of any corporate records made it impossible to ascertain exact amounts of money lent or repaid on either personal or corporate loans. As to Hart's alleged concealment of the commission funds by directing Plaza Motors to issue checks made payable to Midtown Motors rather than Steven Hart personally, French acknowledged the IRS received Form 1099 reports on all the sales commission generated payments, and in fact testified "I'm not saying anything was concealed."

Packman testified that Hart was a small businessman forced to seek non-traditional private banking services simply to keep his business afloat as he did not meet standard credit requirements offered by traditional financial institutions. He testified Hart had an unsophisticated revolving line of credit with Fuhrer, and the payments made to Fuhrer with the Plaza commission checks were intended to reduce the loan liability of Hart's corporation, not his personal loan obligations. According to Packman, Hart borrowed funds from Fuhrer as Midtown's agent. Thus, "whenever Steve Hart would borrow money from Jon Fuhrer, that was a loan from Steve Hart to the corporation."

The district court adopted the government's calculation of Hart's personal income as the more credible of the two opposing proposals. Based on Midtown's failure to report the commissions as income on either its corporate city tax returns or corporate state sales reports, the absence of corporate records, and other inaccuracies in the allocations of some items as deductions, the district court concluded there was "a pattern of activities that simply does not support the existence of legitimate corporate activity here." The district court included the commission income as personal income, and set the amount of tax loss at $126,704.

With respect to the sophisticated means enhancement, the district court concluded Hart's pattern of avoiding taxes,[1] failure to keep even cursory records, and the general scheme of having personal income paid to a corporation and then transferred to a private banker, all indicated a sufficient level of sophistication to support the enhancement. The district court then sentenced Hart to a term of twenty-one months imprisonment, followed by a three-year term of supervised release, and ordered restitution in the amount of $126,704.

II

A.    The Tax Loss Calculation

"[T]he government has the burden at sentencing to prove fact-intensive issues such as tax loss by a preponderance of the evidence." United States v. Tucker, 217 F.3d 960, 961 (8th Cir. 2000). "In some instances . . . the amount of the tax loss may be uncertain; the guidelines contemplate that the court will simply make a reasonable estimate based on the available facts." U.S.S.G. § 2T1.1 cmt. n.1. We review the

---

[1]Hart also had tax deficiencies totaling $50,381.92 from the years 1986-93, which were discharged in bankruptcy.

district court's tax loss calculation for clear error. <u>United States v. Ervasti</u>, 201 F.3d 1029, 1042 (8th Cir. 2000).

Hart contends the government did not prove by a preponderance of the evidence the commissions paid by Plaza Motors were Hart's personal income, and the district court clearly erred when it included the commissions in its calculation of the tax loss. We reject that contention. Hart stipulated in his plea agreement the commission "checks constituted personal income for Defendant Hart." A defendant who voluntarily accepts the provisions of a plea agreement cannot challenge on appeal the punishment to which he willingly exposed himself, because the defendant accepts both the benefit and the burden of the plea agreement." <u>United States v. Piggie</u>, 303 F.3d 923, 928 (8th Cir. 2002).

Even if Hart had not stipulated the commission checks as personal income, we find no error in the district court's tax loss calculation. The evidence presented by the government during the sentencing hearing showed Plaza Motors had not entered a commission agreement with Midtown Motors, that Midtown had no corporate records of the commission checks, and that Hart used money from the commission checks to pay for personal obligations such as a home mortgage, a mortgage on rental property unrelated to Midtown Motors, and personal vehicle payments. The district court had more than sufficient grounds to accept the government's calculations of the tax loss, and to reject the defendant's.

B.     The Sophisticated Means Enhancement

"The district court's factual findings at sentencing are reviewed for clear error, [but] the district court's application and construction of the Sentencing Guidelines are reviewed de novo." <u>United States v. Smotherman</u>, 285 F.3d 1115, 1116 (8th Cir. 2002).

We find no clear error in the district court's findings of fact. The district court found Hart failed to keep even cursory records, and devised a scheme of having personal income paid to a corporation and then transferred to a private banker. The question for our de novo review, then, is whether the district court correctly applied the guidelines when it determined those facts constitute sophisticated means under U.S.S.G. § § 2T1.1(b)(2). We conclude those facts do not constitute sophisticated means.

The guidelines do not permit an enhancement for any and all offense conduct that conceals an offense. The sophisticated means enhancement only applies when a defendant uses "especially complex or especially intricate offense conduct." U.S.S.G. § 2T1.1 cmt. n.4. We have unearthed no case which concludes that the mere failure to keep records, standing alone, evinces sophisticated means to conceal tax evasion. Cf. United States v. Furkin, 119 F.3d 1276, 1285 (2d Cir. 1997) (mentioning failure to keep records as one ground for sophisticated means enhancement in case which also involved defendant's use of fictitious names, destruction of records, and cash purchases of equipment without preparing an inventory or advising accountants of the cash purchases). We can think of no less sophisticated means of concealing a tax evasion offense than by simply failing to keep records of personal income. We recognize the lack of records made it extremely difficult for the government to calculate the total loss attributable to Hart's tax evasion. But extreme difficulty in calculating the tax loss can stem from unsophisticated means. The mere fact the tax loss was difficult to calculate does not prove sophisticated means were used to conceal the offense.

Nor do we believe this is a case in which Hart's failure to keep records can be combined with other factors to justify a sophisticated means enhancement. In addition to the lack of record keeping, the district court relied on the fact that Hart directed Plaza Motors to issue the personal income commission checks in the name of Midtown Motors. The fact Hart directed the commission checks be made payable

to Midtown Motors, rather than himself personally, did not result in concealment of the offense. Hart provided his corporation's tax identification number to Plaza Motors, and Plaza Motors reported all of its commission payments to the government on Form 1099s. Cf. United States v. Elton, 69 F.3d 542, 1995 WL 649696, at **1 (8th Cir. 1995) (unpublished table disposition) (upholding sophisticated means enhancement where defendant transferred income to and from a non-interest-bearing checking account because the conduct generated no 1099 Forms for filing with the IRS). Neither Hart nor Midtown Motors filed tax returns for the income reported by Plaza Motors. Thus, the government clearly had notice of a potential offense. While Hart may have mis-classified the nature of the payments when the payments were disclosed to the government, he took no steps to conceal the income. The government could trace all of the income back to Hart through his corporation's tax identification number.

Finally, the district court relied on the transfer of the commission checks to a private banker. This conduct, however, also resulted in no concealment of the offense. Hart's subsequent use of such a bank-like conduit could not conceal the disclosure that had already taken place when the government received the Form 1099s reporting all of Hart's commission income from Plaza Motors.

Thus, this is not a case where a lack of record-keeping can be combined with other factors to find sophisticated concealment of an offense. The district court erred in applying the enhancement because a lack of record-keeping, standing alone, evinces no sophistication, and the other factors considered by the district court did not conceal the offense.

### III

We affirm the district court's tax loss calculation, but reverse the district court's two-level enhancement under U.S.S.G. § 2T1.1(b)(2), and remand for resentencing.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.