# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3876

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Glenn Benton Finck, also known as | * | |
| Beau Lee DuBois, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: September 14, 2004
Filed: May 11, 2005

_____

Before BYE, BOWMAN, and MELLOY, Circuit Judges.

_____

BYE, Circuit Judge.

Defendant-Appellant Glenn Benton Finck appeals his 63-month sentence for crimes arising from a scheme to fraudulently acquire motor vehicles. Finck argues that the district court[1] improperly enhanced his sentence for obstruction of justice and use of sophisticated means, and he challenges his sentence under United States v. Booker, 125 S. Ct. 738 (2005), for plain error. He also argues that the district court's

_____

[1]The Honorable Richard E. Dorr, United States District Judge for the Western District of Missouri.

use of the name "Glenn Benton Finck" in the judgment rather than "Beau Lee DuBois," which he contends is his true name, amounts to a due process violation.

The district court had jurisdiction to hear this case under 18 U.S.C. § 3231. This court has jurisdiction over the appeal under 28 U.S.C. § 1291. We affirm in all respects.

I.

On April 4, 2003, Finck was charged in a seven-count indictment with crimes arising from a scheme to fraudulently acquire motor vehicles. Count 1 alleged violation of 18 U.S.C. § 2312 (interstate transportation of stolen vehicles); counts 2, 4, and 6 alleged violation of 18 U.S.C. § 2314 (causing an individual to travel in interstate commerce in furtherance of a scheme to defraud); count 3 alleged violation of 18 U.S.C. § 1343 (wire fraud); count 4 alleged violation of 18 U.S.C. § 1341 (mail fraud); and count 7 alleged violation of 18 U.S.C. § 2314 (causing a forged counterfeit security to travel in interstate commerce). He pled guilty to all counts of the indictment.

At sentencing, the district court found, over Finck's objections, that sentence enhancements for obstruction of justice, U.S.S.G. § 3C1.1, and use of sophisticated means, U.S.S.G. § 2B1.1(b)(1)(8)©), were warranted.

The relevant facts are as follows.[2] Finck obtained several vehicles from Reliable Imports and RV ("Reliable") in Springfield, Missouri. He told the Reliable salesperson that he owned stock in a California wine company and would pay for the vehicles by arranging for wire transfers to Reliable's Bank of America account.

_____

[2]The facts are based on those provided in the Presentence Investigation Report (PSR). Finck did not object to any facts in the PSR that are relevant to sentencing.

Before each purchase, Reliable received a fax showing that money had been wired to its Bank of America account. Sometimes, Reliable also received a phone call from someone claiming to be from Bank of America confirming that the wire transfer funds had been deposited. Of course, no money was ever wired to Reliable's account.

In all, Finck obtained seven vehicles from Reliable: a Rage'n trailer, a Coachmen RV, a Mazda 6, a Mazda Miata, a Hyundai Tiburon, a Mercedez Benz C230, and a Ford Thunderbird.[3] Some vehicles were picked up from Reliable, and some were delivered to him at an address in Round Rock, Texas. After fraudulently obtaining these vehicles, he sold two of them. He sold the Coachmen RV to North Bay Ford/Lincoln/Mercury car dealership ("North Bay") in Santa Cruz, California for $100,000, and he sold the Mazda Miata to Roger Beasley Mazda ("Beasley") in Austin, Texas for $16,500. He used the proceeds from the sale of these fraudulently obtained vehicles to purchase a Ford Harley Davidson truck, a motorcycle trailer, and a Lexus SUV.

After Reliable received a fax indicating that payment had been received for the transaction involving the Hyundai Tiburon, the Mercedez Benz C230, and the Ford Thunderbird, a Reliable employee contacted Bank of America to confirm that the funds had been received and learned that they had not. When Reliable expressed concern, Finck arranged to pay for the vehicles with a cashier's check. He presented Reliable with a COMCHECK from DuBois Winery in Lodi, California. After Reliable determined that the COMCHECK was fraudulent, it contacted Bank of America and learned that all of Finck's previous wire transfers were also fraudulent. Law enforcement arranged to have the titles to the Mercedez Benz and the Ford Thunderbird mailed to him at a prearranged location in Texas. Texas law

---

[3]Finck returned the Rage'n trailer to Reliable in exchange for the Coachmen RV.

enforcement officers set up surveillance at this location, but Finck changed the delivery destination while the package was in transit.

Finck was arrested in Austin, Texas while he was attempting to trade in the Mercedez Benz. During an interview with a Secret Service agent, he provided a written statement outlining his fraudulent activity. When questioned about the Coachmen RV, he denied selling the vehicle and told the agent that he drove the Coachmen RV to Lodi, California in December 2002 and left it at an address on Kettleman Lane. As a result of his statement, the Secret Service contacted California authorities to request that they locate the vehicle. After eight days of investigation involving California and Arizona authorities, the Secret Service learned that Finck actually sold the Coachmen RV to North Bay and that North Bay then sold the vehicle to RV Trailer Land in Reno, Nevada.

Also during the interview, Finck stated that he purchased two of his non-Reliable vehicles—the Ford Harley Davidson truck and the motorcycle trailer—with cash that he had saved. A review of documents obtained during a consensual search of his residence revealed, however, Finck did not pay for the Harley Davidson truck and the motorcycle trailer with his savings. Rather, he paid for them (as well as the Lexus SUV) with proceeds from the sale of the fraudulently obtained Coachmen RV.

Authorities then attempted to seize these vehicles. In the meantime, however, Finck sold the Harley Davidson truck to Thomas Bonding for $21,000 to post bond on local Missouri fraud charges.[4] Because bond was set at $10,000, the bondsman secured a bank loan with the Harley Davidson truck, and he remitted the remaining $11,000 to Finck's former attorney. As a result, the bondsman no longer had title to the truck, which made it complicated for law enforcement to seize.

---

[4]Law enforcement was able to seize the Lexus SUV and the motorcycle trailer without incident.

After adjustments for obstruction of justice and use of sophisticated means, Finck was sentenced at offense level 19 and criminal history category VI. The sentencing range was 63 to 78 months for counts 1, 2, 5, 6, and 7, and 60 months for counts 3 and 4. The district court sentenced him to 63 months custody on counts 1, 2, 5, 6, and 7, and 60 months custody for counts 3 and 4, to be served concurrently for a total of 63 months. The district court also imposed a 3-year term of supervised release and ordered him to pay $148,572.40 in restitution.[5] He appeals his sentence and the form of the judgment.

## II.

The district court's factual findings at sentencing are reviewed for clear error, and the district court's application of the sentencing guidelines to the facts is reviewed *de novo*. United States v. Hart, 324 F.3d 575, 579 (8th Cir. 2003). Finck does not challenge any of the facts underlying the obstruction of justice enhancement. As a result, our review is limited to the district court's application of sentencing guideline section 3C1.1 to undisputed facts. United States v. Thompson, 367 F.3d 1045, 1047 (8th Cir. 2004). He also does not challenge any of the facts underlying the sophisticated means enhancement. We therefore review *de novo* "whether the district court correctly applied the guidelines when it determined those facts constituted sophisticated means."[6] Hart, 324 F.3d at 579.

---

[5]In a Supplemental Brief filed on January 9, 2004, Finck argues that the district court erred in failing to consider his ability to pay restitution. However, 18 U.S.C. § 3664(f)(1)(A) states that "the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant.

[6]We note that other panels have reviewed district courts' finding of whether a fraudulent scheme qualifies as "sophisticated" for clear error. See United States v. Anderson, 349 F.3d 568, 570 (8th Cir. 2003); United States v. Brooks, 174 F. 3d 950, 958 (8th Cir. 1999) ("We review the factual finding of whether a [fraud] scheme

A.    Obstruction of Justice

Sentencing guideline section 3C1.1 provides for a two-level sentence enhancement if the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation . . . of the instant offense." Application note 4(g) states that a defendant obstructs justice if he provides "a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense."

During the investigation, Finck made two materially false statements to law enforcement officials: (1) he stated that he left the Coachmen RV in Lodi, California when he actually sold the vehicle to North Bay, and (2) he stated that he paid for a Harley Davidson truck and a motorcycle trailer with his savings when he actually paid for them with proceeds from the sale of the Coachmen RV. These statements led law enforcement astray and allowed him to further his fraudulent scheme during the investigation.

Finck believes that the eight-day delay and resources expended in multiple jurisdictions to locate the Coachmen RV were not a result of his false statement, but of law enforcement's inability to quickly determine that his statement was false. Because he confessed to stealing the Coachmen RV and law enforcement officials

qualifies as 'sophisticated' for clear error.").

We believe the precedent in our circuit to be clear that the application of the guidelines to the facts is reviewed *de novo*, and we cannot see how whether a scheme was sophisticated is "'essentially a question of fact.'" Anderson, 349 F.3d at 570 n.1 (quoting United States v. Hunt, 25 F.3d 1092, 1097 (D.C. Cir. 1994)). We therefore follow the panel decision in Hart and conduct a *de novo* review of the guidelines to the facts. We note that our analysis would not differ were we conducting a review for clear error.

almost simultaneously discovered a receipt for a wire transfer from North Bay to Finck for $99,000 during a consensual search of his house, he believes that law enforcement officials should have been able to deduce that he sold the Coachmen RV to North Bay despite his statement to the contrary. Regardless of what law enforcement may have been capable of deducing, however, they did not find the physical evidence to immediately contradict his statement, and they expended significant time and resources to locate the Coachmen RV.

We have previously found error in obstruction of justice enhancements where the government failed to provide evidence that the false statement actually impeded the investigation. United States v. Banks, 347 F.3d 1266, 1271 (8th Cir. 2003); United States v. Williams, 288 F.3d 1079, 1081 (8th Cir. 2002). Here, however, the government provided testimony during sentencing to establish how Finck's false statement regarding the location of the Coachmen RV caused law enforcement to expend unnecessary resources. See Sentencing Tr. at 12. We believe that the eight-day delay materially and significantly impeded the investigation. See United States v. Thomas, 86 F.3d 263, 263-64 (1st Cir. 1996) (finding a significant hindrance where government provided evidence that defendant's false statement caused prosecution to shift its resources and attention from federal adult to state juvenile proceedings).

Finck's second false statement, that he paid for a Harley Davidson truck and a motorcycle trailer with cash that he had saved, also materially and significantly impeded the investigation. By the time law enforcement officials determined he had in fact purchased the Harley Davidson truck and the motorcycle trailer with proceeds from the Coachmen RV sale, making those vehicles seizable, he had sold the Harley Davidson truck to his bail bondsman. The bondsman took out a bank loan to remit the surplus money to his former attorney and thus did not have title to the vehicle, making it more difficult to seize. The false statement about the source of payment for the Harley Davidson truck by itself, and more so when combined with the false statement about the sale of the Coachmen RV, bought him additional time to further

-7-

his fraudulent scheme, thus significantly impeding the investigation and prosecution of this case. See United States v. Luca, 183 F.3d 1018, 1023 (9th Cir. 1999) (finding obstruction where defendant submitted false documents to state agency to forestall fraud investigation, thus securing additional time to find other victims). The district court did nor err in finding his false statements to warrant a two-level enhancement for obstruction of justice.

Finck also challenges the sufficiency of the district court's findings relating to the obstruction adjustment. "[B]efore imposing an enhancement under § 3C1.1, a district court 'must review the evidence and make independent factual findings necessary to establish a willful impediment to, or obstruction of, justice.'" United States v. Brooks, 174 F.3d 950, 958 (8th Cir. 1999) (quoting United States v. Dunnigan, 507 U.S. 87, 95 (1993)). We believe that the district court's reference to his false statements and the "result with the[e] truck," Sentencing Tr. at 20, are "sufficiently specific to provide this court with a basis for meaningful appellate review." United States v. Molina, 172 F.3d 1048, 1058 (8th Cir. 1999).

B. Sophisticated Means

Sentencing guideline section 2B1.1(b)(1)(8) provides for a two-level sentence enhancement if the offense involved "sophisticated means." Application note 7(B) gives some guidance: "'[S]ophisticated means' means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. For example, in a telemarketing scheme, locating the main office of the scheme in one jurisdiction but soliciting operations in another jurisdiction ordinarily indicates sophisticated means. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means."

Finck argues that his scheme was successful not because it was particularly sophisticated, but because the victim, Reliable, had poor bookkeeping techniques and was thus unsophisticated. He also believes that any fraudulent scheme involves an inherent level of complexity, and he used means no more sophisticated than what is expected of a scheme to defraud. Finally, he points out that during the execution of his scheme, he always used the name Beau Lee DuBois, which made it relatively easy for law enforcement to locate him at his home in Texas.

While Finck did not use sophisticated means to conceal his criminal activity, we find that he used sophisticated means to execute his scheme. Repetitive and coordinated conduct, though no one step is particularly complicated, can be a sophisticated scheme. See United States v. Jackson, 346 F.3d 22, 25 (2d Cir. 2003) (finding an identity theft scheme to be sophisticated although each step of obtaining information about the victim was relatively simple because "the total scheme was sophisticated in the way all the steps were linked together so that [the defendant] could perceive and exploit different vulnerabilities in different systems in a coordinated way"), vacated on other grounds sub nom., Lauersen v. United States, 125 S. Ct. 1109 (2005); United States v. Rettenberger, 344 F.3d 702, 709 (7th Cir. 2003) (finding that husband and wife's faking of husband's disability to collect insurance money, though consisting of simple lies, was sophisticated because "[c]areful execution and coordination over an extended period enabled the [defendants] to bilk more insurers and reduce the risk of detection"). He caused Reliable to receive fax and telephone confirmations that money had been wired to its Bank of America account; he had mail re-routed to make interception difficult; and he transacted business in multiple states. Additionally, he created a story about owning stock in the DuBois winery, which caused Reliable to later accept a COMCHECK from the winery when it realized that the wire transfers had not gone through.

While fraud does involve some level of inherent sophistication, Finck pled guilty to more than simply fraud. He pled guilty to transportation of a stolen vehicle in interstate commerce—an offense that can be as simple as stealing a car and driving it across state lines. He engaged in a repetitive and coordinated scheme to obtain vehicles from Reliable. The district court did not err in finding his offense conduct to be sophisticated.

III.

Because Finck was sentenced under the sentencing guidelines before the Supreme Court deemed them advisory, he challenges his sentence under United States v. Booker, 125 S. Ct. 738 (2005). Because he did not preserve this objection before the district court, we review his sentence for plain error. United States v. Olano, 507 U.S. 725, 731 (1993). "The plain error principle applies even when, as here, the error results from a change in the law that occurred while the case was pending on appeal." United States v. Pirani, No. 03-287, slip op. at 6 (8th Cir. Apr. 29, 2005). He has the burden of proving plain error. Olano, 527 U.S. at 389.

Plain error review is subject to a four-part test. "[T]here must be (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Johnson v. United States, 520 U.S. 461, 466-67 (1997). As in our en banc Pirani decision, it is obvious the first two plain error factors are met here. The district court committed Booker error by applying the guidelines as mandatory, and such error is clear and obvious at this time. See Pirani, No. 03-287, slip op. at 8. He however, fails to satisfy the third plain error factor because he has not shown "a 'reasonable probability,' based on the record as a whole, that but for the error he would have received a more favorable sentence." Id. at 11.

Finck has pointed to nothing in the record to suggest a reasonable probability that the district court would have imposed a lesser sentence absent <u>Booker</u> error.[7] Therefore, he has not carried his burden of demonstrating plain error under <u>Olano</u>, and we do not need to evaluate the fourth plain error factor. Contrary to the argument in his Supplemental Brief regarding plain error, the sentence itself is not illegal under the advisory guideline regime mandated by <u>Booker</u>. <u>See</u> <u>Pirani</u>, No. 03-287, slip op. at 13.

## IV.

Finally, Finck argues that the district court's use of the name "Glenn Benton Finck" in the judgment rather than "Beau Lee DuBois" is a due process violation. Whether his due process rights have been violated is a constitutional question that we review *de novo*. <u>Flores v. Ashcroft</u>, 354 F.3d 727, 729-30 (8th Cir. 2003).

Finck was charged under the name "Glenn Benton Finck"; however, at all times during the commission of these crimes, he claimed to be "Beau Lee DuBois."[8] The district court agreed to add "also known as Beau Lee DuBois" to the caption.

Finck asserts that he has endured hardship amounting to a due process violation as a result of the district court entering judgment against him as "Glenn Benton Finck" because the Bureau of Prisons now refuses to recognize the name "Beau Lee DuBois," under which he has previously served time in federal custody. Thus, for example, he has been required to retake a training course that he has already taken under the name "Beau Lee DuBois."

---

[7]In his Supplemental Brief regarding plain error, Finck challenges the district court's ability to calculate the amount of loss. We note that he did not object to the amount of loss at sentencing.

[8]The PSR indicates that Finck has used fifty-three aliases.

We find the caption's mention of "Beau Lee DuBois" as an alias sufficient to inform the Bureau of Prisons that Finck and DuBois are the same person. Cf. United States v. Bealey, 978 F.2d 696, 699 (Fed. Cir. 1992) (finding that changing the name on a judgment does not enlarge the time for filing an appeal because "the addition of Bealey's other name did not alter Bealey's rights or obligations under the prior judgment . . . . The result of the judgment is the same, the rationale supporting the judgment is the same, and the actual parties to the judgment are the same, although one party's pseudonyms have now been added.").

V.

For the reasons provided above, we affirm the decision of the district court in all respects.

_____