BRIGHT, Circuit Judge,
with whom HEANEY, Circuit Judge, joins, dissenting.
Martha Alvarado-Rivera was sentenced to ten years in prison, rather than about four years, because the sentencing judge, looking at a written summary of Alvarado-Rivera’s unrecorded, untranscribed statement, which the judge did not see or hear, found the statement improbable. The majority affirms, saying the judge’s hunch in looking at this impoverished record counts as “substantial evidence.”
The majority position effectively turns the safety valve into a discretionary award. It does so by allowing greatly flawed credibility judgments that violate due process requirements. I dissent.
I rely on the panel majority opinion now vacated.[4] I augment that opinion here. The Safety Valve and Credibility Judgments
The safety valve is not discretionary. It is conditioned upon certain facts, but if those factual conditions are met, a safety valve award is mandatory. The sentencing judge has no discretion to deny the award. 18 U.S.C. § 3553(f) (“Notwithstanding any other provision of law ... the court shall impose a sentence pursuant to [the sentencing] guidelines ... if the court finds [certain facts].”) (emphasis added).
Because the safety valve award is mandatory, the factual issues that condition an award must be resolved just as any other necessary factual issue at sentencing must be resolved: that is, by a preponderance of the evidence, as judged by a fact-finder who has seen the evidence. See United States v. Petersen, 276 F.3d 432, 437 (8th Cir.2002). Such findings are, of course, reviewed for clear error. United States v. Hart, 324 F.3d 575, 579 (8th Cir.2003).
The fact issue here comes down to one of credibility- — -the credibility of Alvarado-Rivera’s statements in her safety valve proffer, and the credibility of Moya-Vega’s statements. Ordinarily, a trial judge’s credibility determinations are virtually un-reviewable on appeal. But ordinarily the judge has seen the testimony in question. In this case, the judge determined the credibility of statements he neither saw nor heard. The judge did not even have a transcript to read. The judge had nothing more of the statements he was assessing than a letter written by the prosecutor, summarizing the proffers.
A credibility determination based on nothing more than a summary of a statement departs fundamentally from the traditional idea of a credibility judgment. See, e.g., United States v. Raddatz, 447 U.S. 667, 672-84, 100 S.Ct. 2406, 65 *950 L.Ed.2d 424 (1980) (discussed below). The credibility judgment we review here raises two problems.

The Reliability and Deference Problem

This credibility judgment is not entitled to deference. The reasons for deferring to the trial judge’s judgments of credibility do not apply here. We have the same cold record the trial judge had. The trial judge did not see the nuances of statement and demeanor that inform a full credibility judgment any more than we have seen them.
Additionally, the trial judge’s distance from the safety valve proffers creates the risk of greatly — and unjustifiably — increasing the influence of the prosecutor’s assessment of the defendant’s credibility.
Finally, where the trial judge’s credibility judgment is based simply on a feeling that the defendant’s proffer — as relayed in a mere summary — is too improbable to be true, the trial judge’s judgment is of questionable reliability. Judges live greatly removed from the worlds of most of the defendants who pass through their courtrooms. What is a mere banality in a defendant’s world may seem bizarre and unworthy of belief to a judge. The trial judge here, for instance, (and at least one member of this court) found it strange that Alvarado-Rivera told the prosecutor that she had only used the weight scale in her apartment to weigh a bracelet. There is no reason why the trial judge should have been familiar with the practice of weighing jewelry to assess the value of the metal before selling it to a pawnbroker or at a flea market. And that is why the seeming improbability to the judge, isolated from all other indicia of credibility, is a weak and unreliable basis for judgment.
Even when an assertion is improbable in the defendant’s world as well as the judge’s, we know that truth is sometimes stranger than fiction. A credibility judgment based solely on the seeming probability of a statement — without the other indicia of credibility available when one sees and hears the statement made — is incapable of distinguishing between a strange truth and a strange fiction.
The trial judge’s assessment of Alvarado-Rivera’s proffer illustrates the perils of attempting to judge the credibility of a statement one neither saw nor heard'— informed only by a summary of the statement, personal hunches, and a general sense of what seems likely. The judge began his brief discussion of Alvarado-Rivera’s proffer by saying, “Everything that I see tells me that for reasons either you’re scared of what’s going to happen to your family or you’re scared for yourself, I don’t believe that you’ve substantially told the truth.” There is no evidence in the record to support the judge’s belief that Alvarado-Rivera was scared and was lying to protect someone. This was simple conjecture.
The judge went on to list — without discussing them — several elements of Alvarado-Rivera’s statement that the judge thought had “no ring of truth.”[5] None of *951 these elements are particularly surprising or improbable or inconsistent with Alvarado-Rivera’s description of her minimal role in her husband’s drug business: (1) She said she knew about some of the drugs at her apartment but did not know about the drugs in the trailer, so she led the police to the trailer. That is not improbable. (2) She said she used the scale to weigh a bracelet. That is not improbable. (3) She said the informant was the only drug customer she knew of, but the informant was certain Alvarado-Rivera would drive the car to the sale. That might be surprising if we knew something about how the drug sale to the informant came about. But we don’t. Nor did the trial judge. (4) Alvarado-Rivera said her husband sold the drugs, but that she sold food. That is not improbable. Nor does the fact that her sons moved the drugs out of the apartment make any of these assertions more improbable. Nor do the assertions become improbable when taken together rather than one by one.[6]
In short, the trial judge’s assessment of Alvarado-Rivera’s statement — which he knew only from the prosecutor’s letter summarizing the statement — is not only unreliable in principle, but unreasonable on its face. The judge’s assessment appears to have been unduly influenced by the judge’s hunch, unsupported by evidence, that Alvarado-Rivera was scared and was protecting someone.
As a general matter, a credibility judgment based on nothing more than someone else’s summary of a statement one neither saw nor heard nor even has a transcript of, is gravely impaired. The trial judge’s assessment of Alvarado-Rivera’s statement illustrates the principle. The unreliability of an impaired credibility judgment is at the heart, of course, of the due process problem with such judgments.
The Due Process Problem[7]
The second problem raised by the kind of impaired credibility judgment we have here is an unconstitutional deprivation of due process. Because the safety valve is a statutory entitlement for those who meet the conditions — not a discretionary award — the safety valve constitutes a liberty interest that cannot be deprived without due process of law. See U.S. Const., Amend. 5. See also, e.g., INS v. St. Cyr, 533 U.S. 289, 345-46, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (“We have recognized the existence of a due process liberty interest when a State’s statutory parole procedures prescribe that a prisoner ‘shall’ be paroled if certain conditions are satisfied.”) (citing Pardons v. Allen, 482 U.S. 369, 370-371, 381, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987) and Greenholtz v. Inmates of Neb. Penal & Correctional Complex, 442 *952 U.S. 1, 12, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979)).
The process by which a tribunal finds facts that result in a loss of liberty must pass constitutional muster. This is true, of course, for credibility determinations as it is for any other factual finding. We would not hesitate to vacate a judgment in a civil suit tried by a judge, if the decision rested on the kind of impaired credibility judgment we have in this case. If, during the critical testimony, the judge left the courtroom and later made an adverse credibility judgment based merely on a summary of the testimony, we would vacate the judgment without hesitation. That hypothetical credibility judgment is, in critical respects, like the judgment we examine here.
What process is due when a sentencing judge makes a safety valve credibility finding? The Supreme Court has given us strong guidance. In Raddatz, 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424, the Court considered the due process requirements for a credibility judgment concerning a pretrial motion to suppress certain evidence in a criminal trial.
In Raddatz, the Court reviewed a district judge’s adoption, after reviewing the transcript but without hearing the testimony for himself, of a magistrate judge’s express credibility findings. It was a difficult question for the Court whether the district judge violated due process requirements by adopting the credibility findings without hearing the testimony himself.
On the view of any of the eight Justices who addressed the due process issue in Raddatz, the impaired credibility judgments we review here would seem to violate the Due Process Clause.[8] Raddatz concerned a crucial pre-trial credibility issue. We address a crucial post-trial credibility issue. In both cases, the entire matter turned on the credibility judgment. Here, however, two fundamental elements are lacking — elements crucial to the Court’s decision in Raddatz that the process due had been observed: (1) the presence of an original credibility finding made by a judge who had seen and heard the testimony, and (2) the district court’s review of the transcript of the hearing conducted by the magistrate judge.
For all of the Justices addressing the due process issue, those two elements of the case were crucial to the issue. Id. at 680-81, 100 S.Ct. 2406. For the majority in Raddatz, even those safeguards would likely not constitute due process for the second, reviewing judge to reject the first judge’s credibility findings and to make his own independent credibility findings without seeing and hearing the statements himself. See id. at 684, 100 S.Ct. 2406 (Blackmun, J., concurring and providing the fifth vote); id. at 679, 681 n. 7, 100 S.Ct. 2406 (Burger, C.J., writing for a five-justice majority as limited by Justice Blaekmun’s concurrence).
The due process analysis of Raddatz does not countenance a credibility finding in the first instance by a judge who neither saw nor heard the statements being assessed, nor had a transcript of those statements, but had merely the prosecutor’s written summary of the statements.
Given the extreme importance of credibility judgments for safety valve applicants — in AIvarado-Rivera’s case, 60% of her potential sentence hung in the balance — the sort of impaired credibility judgment we have here is woefully inadequate. We think it plain under the Rad- *953 datz analysis that the district court erred by denying the appellants the process that was due in order to protect the liberty interest created by the mandatory safety valve.[9]

Conclusion

The majority opinion countenances a dramatic departure from the traditional idea of credibility judgments and from basic requirements of due process in determining facts. Thus I dissent.

. United States v. Alvarado-Rivera, 386 F.3d 861 (8th Cir.2004).

. The whole of the judge's discussion of the substance of Alvarado-Rivera’s proffer was as follows:
There’s no ring of truth to this. Everything that I see tells me that for reasons either you’re scared of what's going to happen to your family or you're scared for yourself, I don’t believe that you've substantially told the truth. None of this makes sense to me. Apart from going to the trailer and apart from what [the prosecutor] said, whether it’s using the scale, wearing a bracelet or an informant being absolutely certain, well, I'll tell you exactly how the deal is going to go, it’s going to be his wife driving the car, and apart from what the husband has said or not said, the idea that, well, I only know of one person that we’ve ever sold drugs to *951 and any money I've gotten I’ve gotten from selling food. None of it makes any sense the way some of these items were moved by sons. All of it points to me that you weren't substantially truthful.
Is it possible that I've made a mistake? Yes.
But then it's my responsibility.
Sent. Tr. at 37-38.

. Apart from being probable, Alvarado-Rivera's statement is entirely consistent with the evidence — which was that she played a minor role in the crime. Indeed, the final presen-tence report, which incorporated the government's objections to a preliminary report, assigned a base offense level of thirty, rather than thirty-six, because of Alvarado-Rivera's minor role. Additionally, the report recommended a two-level reduction for Alvarado-Rivera’s minor role, and a three-level reduction for acceptance of responsibility.

. While defendants preserved the denial of the safety valve for review, neither defendant has made a Due Process argument. The Due Process issue appears on the face of the record, however, and we are not precluded from addressing it.

. Justice Stewart, the ninth vote, did not address the due process issue. He would have decided the case differently on statutory grounds. See Raddatz at 688-89, 100 S.Ct. 2406.

. The sentencing judge specifically stated that he wished he could sentence Alvarado-Rivera under the guidelines, rather than under the mandatory minimum sentence.