# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-1947

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff–Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| John Lloyd Halloran, | * | |
| | * | |
| Defendant–Appellant. | * | |

_____

Submitted: May 12, 2005
Filed: July 28, 2005

_____

Before WOLLMAN, BYE, and COLLOTON, Circuit Judges.

_____

BYE, Circuit Judge.

John Lloyd Halloran appeals the thirty-seven month sentence imposed by the district court[1] after he pleaded guilty to wire fraud in violation of 18 U.S.C. § 1343. On appeal, he challenges the district court's sentencing findings with respect to the amount of loss and the sophistication of his means to commit the fraud. Halloran also argues for the first time on appeal he is entitled to be resentenced because his sentence violates the Sixth Amendment. For the following reasons, we affirm the judgment of the district court.

_____

[1]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

## I.

On February 22, 2003, Halloran placed an advertisement on the Internet offering to sell a mortgage on a piece of real estate located at 3835 Lyndale Avenue North in Minneapolis, Minnesota. The principal sum of the mortgage was purported to be $160,000 with a note balance of $124,400. In reality, however, the mortgage did not exist, and Halloran did not own the property which was allegedly encumbered by it. Nevertheless, on February 24, 2003, a mortgage broker from Wes-Com Funding, Limited responded to Halloran's offer to sell the mortgage on the Lyndale property. In an effort to foster the sale of the mortgage, Halloran provided Wes-Com with numerous fraudulent documents purporting to show that Halloran had a valid mortgage to sell. He created these fraudulent documents using a typewriter from CopyMax. Halloran used the name Jay Hawthorne, Vice President of The Gallery, Incorporated when he provided these documents. Halloran identified himself as President of The Gallery.

On April 2, 2003, Wes-Com advised Halloran that Metropolitan Mortgage had agreed to purchase the fraudulent mortgage for $115,000. Wes-Com requested Halloran provide it specific documents to facilitate the sale of the mortgage. On May 13, 2002, in response to the documentary request, Halloran faxed numerous fraudulently created documents to Wes-Com. The documents included an option agreement; page one of a purchase agreement regarding the non-existent mortgage; a U.S. Bank down payment check from a fabricated buyer, Chester Pepper, in the amount of $35,000; and a fictitious deposit slip purporting to corroborate the deposit of the $35,000 down payment.

In addition to the fraudulent documents faxed to Wes-Com, to further execute his scheme Halloran created a fake mortgage and made it appear as if he had the authority to sell the mortgage. He accomplished this by creating a fictitious warranty deed that purported to transfer ownership of the Lyndale property from its rightful

owner, Howard Garren, to The Gallery. Halloran then created a second fictitious warranty deed which purported to transfer the property from The Gallery to Chester Pepper. These deeds contained forged signatures and were fraudulently notarized. After creating the fraudulent warranty deeds, Halloran filed them with the Hennepin County Recorder's Office. Halloran then made it appear as if The Gallery had loaned funds to Pepper to purchase the Lyndale property. Based on this purported financing by The Gallery, Halloran created the fake mortgage between Pepper and The Gallery, the mortgage he was attempting to sell.

Once the fraudulent mortgage and other fake documents were created and recorded, Halloran was in a position to close on the sale of the fraudulent mortgage to Metropolitan Mortgage. The closing was being arranged by John F. Bonner, a Minneapolis lawyer. Bonner, however, discovered Halloran was attempting to sell a fraudulent mortgage and contacted the Federal Bureau of Investigation (FBI). On June 23, 2003, Halloran contacted Bonner, who by that time had agreed to work with the FBI, to set up the closing for June 30. Halloran proceeded to closing and was subsequently arrested in possession of the $115,000 check he received from the sale of the mortgage.

As Halloran attempted to sell the mortgage to Wes-Com, his Internet advertisement received two additional responses. The first additional response came from a broker representing Greater Assets Investments (GAI) in Bolinbrook, Illinois, who offered to purchase the mortgage for $117,000. On May 2, 2003, Halloran provided GAI with numerous fraudulent documents in an effort to market the fraudulent mortgage to GAI. An appraisal on the property was completed for GAI on May 29, 2003, and Halloran continued to provide GAI with information and documentation as late as June 23, 2003, when, approximately an hour after Halloran had spoken with Bonner about scheduling the Metropolitan Mortgage closing, Halloran faxed to GAI the fraudulent deposit slip purporting to show a down payment by Pepper. A telephone conference between Halloran and GAI was scheduled on July

2, 2003, two days after the Metropolitan Mortgage closing, to discuss the proposed sale of the mortgage, but this telephone conference did not occur because of Halloran's intervening arrest.

The second additional response came from All Fund Mortgage in Eagan, Minnesota. While pursuing the sale of the mortgage to Metropolitan Mortgage and GAI, Halloran was also seeking to refinance the loan through All Fund in the amount of $110,600. As with the other transactions, Halloran provided fraudulent documents to various parties in an effort to accomplish this refinancing. On June 30, 2003, All Fund scheduled the closing on the refinancing for July 3, 2003, three days after the scheduled closing with Metropolitan Mortgage. The refinancing did not close, again because of Halloran's intervening arrest.

After Halloran's arrest, a federal grand jury indicted him on one count of wire fraud in violation of 18 U.S.C. § 1343. He pleaded guilty, and the matter proceeded to sentencing. Prior to sentencing, the district court ordered the probation officer to conduct a presentence investigation and prepare a report. Upon submission of the report, as relevant to this appeal, Halloran objected to the probation officer's guideline enhancement for amount of loss. He maintained the probation officer incorrectly calculated the loss figure using all three attempted transactions, rather than the single transaction with Metropolitan Mortgage. Halloran also objected to the probation officer's inclusion of an enhancement for use of sophisticated means.

The district court issued an order addressing the disputed enhancements. The district court found the loss figure for guideline purposes was $342,600, a figure which included all three attempts to sell and refinance the mortgage. As a factual matter, the district court found Halloran intended to close on all three transactions. The district court also found the sophisticated means enhancement applicable. In making this finding the district court recited the numerous actions taken by the Halloran and concluded that he "coordinated a complex series of false property

-4-

transfers using false identification, a corporate front, forged notary stamps, fraudulent documents, forged signatures, fraudulently filed documents and the internet to achieve his goals."

Based on these findings, the district court determined Halloran's total offense level, with a three point reduction for acceptance of responsibility, was seventeen. Halloran was in Criminal History Category III, which resulted in a guideline imprisonment range of thirty to thirty-seven months. On April 14, 2004, the district court sentenced Halloran to thirty-seven months imprisonment. He thereafter filed a timely notice of appeal, Fed. R. App. P. 4(b), and we exercise jurisdiction pursuant to 28 U.S.C. § 1291.

II.

On appeal, Halloran challenges the factual findings underlying the district court's imposition of guideline enhancements for amount of loss and sophisticated means. We review these factual findings for clear error. United States v. Fink, 407 F.3d 908, 913 (8th Cir. 2005). To the extent Halloran challenges the application of the sentencing guidelines to these factual findings, we review the district court's application *de novo.* Id. Halloran also contends, in a claim brought for the first time on appeal, that his sentence was imposed in violation of the Sixth Amendment. We review this claim for plain error. United States v. Olano, 507 U.S. 725, 731 (1993).

A.

Halloran contends the district court committed clear error when it found the amount of loss was $342,600, an amount which included losses from all three attempted transactions. Halloran argues he intended to peddle the counterfeit mortgage only once, and the record does not support the district court's finding to the contrary. He argues the district court committed clear error by finding he intended

to finance the mortgage three times because recording requirements would render multiple attempts impossible. He dealt with multiple brokers, he asserts, only to ensure that one deal would actually go through.

In view of the clearly erroneous standard, we reject Halloran's claim of error. See Burns v. McGregor Elec. Indus., 955 F.2d 559, 563 (8th Cir. 1992) ("A factual finding is clearly erroneous if it is not supported by substantial evidence in the record, if it is based on an erroneous view of the law, or if the reviewing court is left with the definite and firm conviction that an error has been made."). The record contains numerous pieces of evidence tending to show Halloran's actions were not those of a man seeking to finance a fraudulent mortgage on a one time basis. The record indicates Halloran simultaneously proceeded on parallel tracks with each mortgage company. His reason for simultaneous dealing may have been as innocuous as he contends, but it is also reasonable to infer a nefarious purpose because his simultaneous dealing increased the chances the companies would not find out about each other.

Evidence of his nefarious purpose can also be gained from his actions after he established a closing date with Metropolitan Mortgage. When Metropolitan Mortgage informed him they intended to close, Halloran immediately faxed fake documents to GAI. This could reasonably be construed as an effort to push another closing forward. Furthermore, Halloran scheduled a closing with All Fund two days after the first scheduled closing with Metropolitan Mortgage. Because of the suspicious timing of this second closing, the district court again could have reasonably inferred Halloran intended to close on more than one transaction.

Even though Halloran argues three separate closings would have been impossible, we believe the district court reasonably inferred it would not have been impossible because of Halloran's proven skill and propensity to create sham

documents.[2]  Thus, while it is plausible Halloran intended to sell the counterfeit mortgage only once, it is equally plausible he could have intended to execute on his scheme three times.  See United States v. Jackson, 155 F.3d 942, 948 (8th Cir. 1998) ("As long as the loss determination is plausible in light of the record as a whole, clear error does not exist.").  The district court therefore did not commit clear error by figuring all three transactions into the amount of loss.  See United States v. Tucker, 243 F.3d 499, 506 (8th Cir. 2001) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.").

B.

Next, Halloran argues the district court committed clear error when it found, for purposes of the two-level enhancement under U.S.S.G. § 2B1.1(b)(8)(C), that his mortgage scheme involved the use of sophisticated means.  According to Halloran, his scheme did not employ sophisticated means–he simply used a typewriter to forge documents which he filed with the County Recorder.

Applying the previously mentioned standards of review to the present case, we find no error in either the district court's findings of fact or its application of the guidelines thereto.   While certain aspects of Halloran's scheme were not especially complex or especially intricate, see U.S.S.G. § 2B1.1 cmt. 6 (defining sophisticated means as especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense), his total scheme was undoubtably sophisticated.  See United States v. Jackson, 346 F.3d 22, 25 (2d Cir. 2003) (stating that a scheme may be sophisticated even if each step in the scheme was not elaborate, as long as the total scheme was sophisticated).  Halloran's scheme did not involve a single fraudulent act, but a complex series of fraudulent transactions.  To accomplish

_____

[2]See also U.S.S.G. § 2B1.1 cmt. 2 (stating that impossibility is not a valid consideration in determining the intended amount of loss).

his multi-layered plot, Halloran required the use of a corporate entity, numerous fraudulent documents and forged notary stamps. His elaborate scheme also required him to manipulate official property records by recording fictitious transfers of property and to exploit numerous individuals by forging their signatures on various fraudulent documents. We therefore hold the district court did not commit clear error by recognizing an enhancement for the use of sophisticated means where the scheme involved "a complex series of false property transfers using false identifications, a corporate front, forged notary stamps, fraudulent documents, forged signatures, fraudulently filed documents." See Tadlock v. Powell, 291 F.3d 541, 546 (8th Cir. 2002) ("A factual finding supported by substantial evidence on the record is not clearly erroneous.").

## C.

Finally, Halloran claims the district court violated the Sixth Amendment by mandatorily enhancing his sentence based upon judge found facts. See United States v. Blakely, 542 U.S. 296 (2004). Most of his arguments were put to rest in United States v. Booker, 125 S. Ct. 738 (2005), and we will not resurrect them here. To the extent a claim of error remains unsettled by Booker, he raised it for the first time on appeal and therefore review is for plain error. See Olano, 507 U.S. at 731. To prevail under plain error review, Halloran must show: there was error, the error was plain or obvious, and the error affects his substantial rights. Finck, 407 F.3d at 916. If these conditions are met, we exercise our discretion to notice a plain error "only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id.

"As in our en banc Pirani decision, it is obvious the first two plain error factors are met here. The district court committed Booker error by applying the guidelines as mandatory, and such error is clear and obvious at this time." Id. (citing United States v. Pirani, 406 F.3d 543, 550 (8th Cir. 2005) (en banc)). Halloran, however,

cannot show the plain error affects his substantial rights.  To do so, he must show by a reasonable probability, based on the record as a whole, he would receive a more favorable sentence under an advisory guideline regime.  Id.  Our independent review of the sentencing transcript reveals nothing to suggest that the district court would have imposed a lesser sentence under an advisory regime.  We therefore conclude Halloran cannot satisfy his burden of demonstrating plain error.

III.

We affirm the judgment of the district court.

_____